

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-12-00425-CV

UNIVERSITY OF TEXAS AT
ARLINGTON

APPELLANT

V.

SANDRA WILLIAMS AND STEVE
WILLIAMS

APPELLEES

----------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant the University of Texas at Arlington appeals from the trial court's order denying its motion to dismiss the claims of Appellees Sandra and Steve Williams. In three issues, UTA argues that Sandra's claims are governed by the recreational use statute, that Sandra failed to show that UTA had actual or constructive knowledge of any dangerous condition, and that Steve did not

---

[1]*See* Tex. R. App. P. 47.4.

provide notice of his claims as required by statute. Because we hold that the recreational use statute does not apply, that the Williamses raised a fact issue about UTA's gross negligence, and that UTA had adequate notice of Steve's claims, we affirm.

## Background

The Williamses attended their daughter's high school soccer game at UTA's Maverick Stadium. When the game was over, Sandra walked down the stadium stairs toward field level. Sandra stopped to wait for her daughter by a gate that separated the stands from the field; this gate had a chain and padlock. Sandra placed her hand on the gate, and as she did so, it swung open. Sandra fell approximately five feet onto the track below, breaking her left arm and a rib.

Sandra and Steve sued UTA alleging that the swinging gate was secured with only a chain and a faulty lock and that this was a dangerous condition that proximately caused Sandra's injuries. They asserted that UTA was negligent by failing to repair a gate latching mechanism that had broken off; failing to discover and remove the faulty lock within a reasonable time; failing to properly maintain and inspect the swinging gate and lock; failing to take any corrective action to prevent a recurrence after similar events had previously occurred; and failing to warn Sandra of the unsafe condition. They further asserted that at the time of Sandra's injury, she was not engaged in any activity that would bring her claims under the recreational use statute. Steve asserted damages for loss of consortium.

2

In response, UTA filed a plea to the jurisdiction and motion to dismiss. UTA asserted that attending a sporting event is a recreational use and that UTA's liability was therefore limited by the recreational use statute's trespasser standard. It claimed that Sandra had not shown that UTA had acted willfully, wantonly, or with gross negligence and that because she had failed to demonstrate that UTA violated any duty toward her, she therefore had failed to state a claim under the Texas Tort Claims Act (TTCA). UTA further alleged that because Steve's claim was derivative of Sandra's, it also failed, and, alternatively, Steve had failed to give notice of his claim.

In response, the Williamses argued that Sandra was not engaged in a recreational activity at the time of her fall, and therefore the recreational use statute did not apply. They argued in the alternative that the motion to dismiss should be denied because UTA's acts and omissions were grossly negligent. They also asserted that they provided notice to UTA of Sandra's claims and that this notice was sufficient to give UTA notice of Steve's claim.

In support of their response, the Williamses attached evidence from the deposition of Thomas Kloza, associate director for Maverick Stadium. Kloza stated that the gate at one time had a latch system to secure it but that the latch had broken at some point and was replaced with a chain and padlock. Kloza further stated that no analysis was conducted to verify that the chain and lock were sufficient to secure the swinging gate and that there was no sign on the gate warning people not to lean on the gate. Kloza stated that the padlock on

chains on other gates at the stadium had failed before and that after the accident, UTA's safety department concluded that the lock was not designed to be used as it was.

The trial court denied UTA's plea to the jurisdiction and motion to dismiss, and UTA now appeals.

## Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo.[2] A plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction.[3] Accordingly, because a governmental unit has immunity from suit,[4] a plaintiff asserting a claim against a governmental unit must allege facts that affirmatively demonstrate that the legislature has waived immunity for the claims brought.[5]

In determining a plea to the jurisdiction challenging the pleadings, that is, asserting that the plaintiff has not met this burden, a court looks at the allegations

---

[2]*Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 407 (Tex. App.—Fort Worth 2006, pet. denied).

[3]*City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).

[4]*State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

[5]*City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied).

4

in the plaintiff's pleadings and accepts them as true.[6] If, however, a plea to the jurisdiction challenges the existence of jurisdictional facts, a court must also consider the relevant evidence necessary to resolve the jurisdictional issues raised.[7]

When a jurisdictional challenge also implicates the merits of the plaintiff's claim, the trial court considers the evidence submitted by the parties to determine if a fact question exists.[8] If the evidence creates a fact question about the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction; instead, the trial court must leave the fact issue for determination by the fact finder.[9] But if the evidence is undisputed, or if the evidence does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.[10]

**Analysis**

*Whether Sandra Engaged in a Recreational Activity*

In UTA's first issue, it argues that the trial court erred by denying its motion to dismiss because Sandra was engaged in a recreational activity—spectating at

---

[6]*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Pakdimounivong*, 219 S.W.3d at 407.

[7]*Miranda*, 133 S.W.3d at 227.

[8]*Id.*

[9]*Id.* at 227–28.

[10]*Id.* at 228.

an outdoor sporting event—when she was injured, and she failed to show that she was injured willfully, wantonly, or through gross negligence.

Under the TTCA, the legislature has provided a waiver to sovereign immunity for certain tort claims.[11] A premises defect claim is one type of claim for which the legislature has provided a waiver of immunity.[12] That waiver is limited, however, by Texas's recreational use statute.[13]

The part of the civil practice and remedies code known as the recreational use statute provides that if an owner of real property—including a governmental unit—gives permission to another to enter the premises for recreation, the owner owes to that person only the degree of care owed to trespassers.[14] The owner does not "assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted."[15] This limitation does not apply, however, to an owner "who has been grossly negligent or has acted with malicious intent or in bad faith."[16] In that circumstance,

---

[11]See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.002, 101.021, 101.025 (West 2011); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006).

[12]Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.022.

[13]*Id.* § 75.002 (West 2011); *Shumake*, 199 S.W.3d at 283.

[14]Tex. Civ. Prac. & Rem. Code Ann. §§ 75.002(c), 75.003 (West 2011) ("Except as otherwise provided, this chapter applies to a governmental unit.").

[15]*Id.* § 75.002.

[16]*Id.* § 75.002(d).

immunity for a governmental unit is waived as otherwise provided in the TTCA.[17]

Thus, if Sandra were engaging in recreation when she was injured, then UTA owed her only the duty it would owe to a trespasser unless it had been grossly negligent or acted with malicious intent or in bad faith.

Section 75.001 provides a list of activities that are, by statute, recreation. Although the list is not exclusive, the term includes only activities "such as" those included on the list.[18] Section 75.002(e) contains a short list of additional activities that are also recreation.[19]

The Supreme Court of Texas has said that it is not a person's purpose in entering a sporting facility that is controlling in determining whether a claim falls within the recreational use statute; it is what the person was doing when she was injured that controls.[20] We do not decide whether playing soccer counts as recreation for purposes of the recreational use statute. Sandra was not playing soccer when she was injured, and she was not on the premises for the purpose of playing soccer. Sandra was leaving the stadium after watching a soccer game. Neither spectating at a sporting event nor exiting the premises after

---

[17]*City of Dallas v. Patrick*, 347 S.W.3d 452, 456 (Tex. App.—Dallas 2011, no pet.) (recognizing that a municipality waives immunity under the TTCA and recreational use statute if the municipality is grossly negligent).

[18]Tex. Civ. Prac. & Rem. Code Ann. § 75.001(3) (West 2011).

[19]*Id.* § 75.002(e).

[20]*City of Bellmead v. Torres*, 89 S.W.3d 611, 614 (Tex. 2002).

7

spectating is like the activities listed as recreation under the recreational use statute.[21] Nor do these activities fall within the section's catchall of "any other activity associated with enjoying nature or the outdoors."[22] Sandra's spectating and departure from the stadium were associated with enjoying her daughter's soccer game, not nature or the outdoors. And we note that although this statute has been amended numerous times since its adoption, the legislature has never seen fit to add spectating at a sporting event to the list of activities considered to be recreation.[23] We hold that the recreational use statute does not apply to Sandra's claims.

We also disagree with UTA that the Williamses failed to allege or raise a fact issue as to gross negligence. Gross negligence differs from ordinary negligence in that gross negligence is "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others."[24] Because UTA challenged both the

---

[21] *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.001.

[22] *See id.* § 75.001(3)(L); *but see Sam Houston State Univ. v. Anderson*, No. 10-07-00403-CV, 2008 WL 4901233, at *3 (Tex. App.—Waco Nov. 12, 2008, no pet.) (mem. op.) (holding that sitting outdoors on bleachers while watching a baseball game is a form of recreation under the recreational use statute).

[23] *See, e.g., Torres*, 89 S.W.3d at 616–17 (Hankinson, J., dissenting) (discussing some of the revisions to the statute over the years).

[24] *Shumake*, 199 S.W.3d at 287; *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007) (stating that "gross negligence is not synonymous with negligence, but rather requires the existence of an extreme risk of serious injury or death, evaluated both objectively and subjectively").

8

pleadings and jurisdictional facts as to whether UTA acted with gross negligence, Sandra was required to produce evidence sufficient to raise a fact issue as to whether (1) UTA had committed an act or omission; (2) the act or omission involved an extreme degree of risk; (3) UTA had subjective awareness of the extreme degree of risk; and (4) this awareness indicated a conscious indifference to the rights, safety, or welfare of others.

The Williamses pled that UTA was grossly negligent in that it: failed to properly secure the gate that guarded the five-foot drop-off; failed to repair the gate latch that had broken off; used a rusted and faulty lock and chain to secure the gate to the railing; and failed to warn the Williamses of the danger of the unsecured gate. In the Williamses' response to UTA's motion to dismiss, they asserted that after the latching mechanism broke on the swinging gate, UTA's failure to properly secure the gate when there was no stairwell in place and when the gate blocked a five-foot drop off involved an extreme degree of risk.

The Williamses pointed to Kloza's deposition testimony indicating that UTA knew that the latch on the gate had broken and that it had secured the gate with a chain and padlock instead of replacing the latch system. Kloza testified that the same chain and padlock system had been used on other gates at the stadium, and some of the padlocks had previously failed. UTA employees replaced the locks on a consistent basis when the employees felt that they might fail.

9

The Williamses produced some evidence that UTA had knowledge that the padlocks had a tendency to fail but nevertheless relied on one of these locks to keep the gate closed. UTA knew of the drop-off because it was part of the stadium's design: Kloza testified that a stairwell could be and during certain events was moved up to the gate to provide access to the field from the stands. Kloza also testified that UTA posted no warning to stadium visitors to not lean on the gate.

Thus, the only safety measure to prevent the gate swinging open to subject visitors to an unexpected five-foot drop-off of which UTA was aware was a chain secured by a lock of a type that UTA knew had a tendency to fail. We agree with the Williamses that they pled and produced sufficient evidence to raise a fact issue about whether UTA committed an act or omission involving an extreme degree of risk; that UTA had subjective awareness of this extreme degree of risk; and that this awareness indicated a conscious indifference to the rights, safety, or welfare of others. We overrule UTA's first issue.

*Whether UTA Had the Requisite Knowledge of the Dangerous Condition*

In UTA's second issue, it argues that the trial court erred by denying UTA's motion to dismiss because Sandra failed to show that UTA had actual or constructive knowledge of any dangerous condition. The Williamses' claim of gross negligence alleged UTA's subjective awareness of the extreme degree of risk from the dangerous condition, and the same evidence raising a fact issue on this element of gross negligence was sufficient to raise a fact issue about

10

whether UTA had constructive knowledge of the dangerous condition.[25] We overrule UTA's second issue.

*Whether Steve Provided the Required Notice of His Claims*

In UTA's third and final issue, it argues that the trial court erred by failing to dismiss Steve's loss of consortium claim because he failed to give UTA six months' notice as required by Texas Civil Practice and Remedies Code section 101.101(a).[26]

Section 101.101 provides that "[a] governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred."[27] The purpose of the statute is to "enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."[28] To that end, the section gives a framework for what the notice should include, stating that the notice "must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident."[29] But these notice provisions do

---

[25] *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000) (explaining that "[c[onstructive knowledge is a substitute in the law for actual knowledge").

[26] Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (West 2011).

[27] *Id.* § 101.101(a).

[28] *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004) (internal citation omitted).

[29] Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a).

not apply "if the governmental unit has actual notice . . . that the claimant has received some injury."[30]

The Supreme Court has discussed what kind of actual notice a governmental unit must have to excuse a plaintiff's failure to give the formal notice required by section 101.101. The governmental unit must have the information to which it is entitled under the section along with a "subjective awareness of fault."[31] But a governmental unit does not have actual notice merely because it investigated an incident or because it should have known from the investigation that it might have been at fault.[32] The governmental unit must be subjectively aware of its fault in producing or contributing to the claimed injury.[33] If it has that subjective awareness and the other information required by section 101.101, then formal notice by a plaintiff is not required.[34]

Under the notice provision, then, Steve was not required to give formal notice of his claim if UTA had actual notice of the damage or injury claimed, the incident giving rise to the damage or injury, the time and place of the incident, as well as subjective awareness that its fault produced or contributed to Steve's

---

[30] *Id.* § 101.101(c).

[31] *Simons*, 140 S.W.3d at 347.

[32] *Id.* at 347–48.

[33] *Id.* at 348.

[34] *Id.*

injuries.[35] The fact that UTA investigated Sandra's accident would not be enough to put UTA on notice, nor would it be sufficient if UTA's investigation *should have* made it aware that it was at fault. If UTA did not have the required subjective awareness of fault, then Steve was required under the statute to give UTA formal notice of his claim not later than six months after the day of Sandra's accident— when the incident giving rise to his claim occurred.

Steve's loss of consortium claim is derivative of Sandra's claim in that to recover damages on his claim, he would be required to establish that UTA is liable for *Sandra's* injuries.[36] Sandra provided UTA the formal notice of her claims in compliance with section 101.101. Sandra therefore put UTA on notice of the information required under that section and of her assertion that UTA was at fault for her injuries. In that notice, Sandra included the identity and contact information for Steve as a witness to the incident, and she identified him as her spouse. Steve's claims are based on Sandra's injuries, for which Sandra gave

---

[35] *See id.*

[36] *Compare In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009) (orig. proceeding) (providing that a loss of consortium claim is derivative but *not entirely* derivative as wrongful death claims are and that instead, such a claim is a "separate and independent" claim that is "distinct from the underlying action") (emphasis added), *with Brewerton v. Dalrymple*, 997 S.W.2d 212, 217 (Tex. 1999) (stating that a wife's loss of consortium claim was "*wholly* derivative" of her husband's claim) (emphasis added); *see also Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978) ("[W]hile the deprived spouse's suit for loss of consortium is considered to be derivative of the impaired spouse's negligence action to the extent that the tortfeasor's liability to the impaired spouse must be established, the consortium action is . . . independent and apart from that of the impaired spouse's negligence action.").

notice and asserted UTA's fault.  If UTA was on notice of Sandra's injury and its fault for that injury, then it was on notice for Steve's injury as well, because his injury was based on Sandra's injury.  UTA certainly had enough information to enable it to gather information necessary to guard against Steve's claims to the extent they are unfounded, settle his claims, and prepare for trial.  UTA therefore had adequate notice of Steve's claims.[37]  We overrule UTA's third issue.

### Conclusion

Having overruled UTA's three issues, we affirm the trial court's order.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  March 28, 2013

---

[37] *See Simons*, 140 S.W.3d at 347.

14