

# NUMBER 13-12-00679-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CITY OF CORPUS CHRISTI,**                                           **Appellant,**

**v.**

**JANETTE FERGUSON,**                                              **Appellee.**

---

### On appeal from the County Court at Law No. 1
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant the City of Corpus Christi challenges the trial court's denial of its plea to the jurisdiction on appellee Janette Ferguson's premises liability claims. By one issue, the City argues that the trial court erred in denying its plea to the jurisdiction based on governmental immunity because Ferguson's claims fall under the Texas Recreational

Use Statute and, as required by that statute, she failed to demonstrate the City was grossly negligent. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(f) (West 2011). We affirm.

## I. Background

The following facts are drawn from Ferguson's pleadings and the evidence admitted as part of the plea to the jurisdiction proceedings. On December 4, 2009, Ferguson traveled from her home in San Antonio to Corpus Christi, where she planned to participate with her family in the Harbor Lights Festival boat parade scheduled for the next day, December 5, 2009, at the Corpus Christi Marina. The City owns and operates the Marina. Ferguson spent that night on her family's sailboat, which is kept in a slip the family leases on the Marina's "C" pier. At around 9:30 a.m. on the morning of December 5, 2009, Ferguson woke and went to the Marina's bathroom facility to take a shower. Ferguson then walked back toward the "C" pier. She passed through the gate to the pier, and within three steps of passing through the gate, Ferguson slipped and fell on a sheet of ice.

Excerpts of the deposition of Ron Hebert, who also leased a slip at the Marina for his boat, were admitted as part of the plea proceedings. In his deposition, Hebert stated that on the night before the accident, he observed water trickling out of a hose onto the front of the "C" pier, near the gate. When he awoke at around 6:30 or 7:00 a.m. on the morning of December 5, Hebert saw that the water was still trickling and that a sheet of ice had formed on the pier. Hebert stated that he turned off the hose and then called the Marina about the ice.

Ferguson sued the City for general and gross negligence and premises liability.[1] The City filed a plea to the jurisdiction, arguing that its immunity was not waived under the Texas Tort Claims Act (TTCA) or the recreational use statute because Ferguson could not demonstrate gross negligence. As part of its plea, the City produced deposition testimony of Marina employees who stated that warning signs were posted on the gates to all piers on December 4, 2009. The signs stated as follows: "WARNING!!! Water lines have been drained to prevent freeze damage, water will be restored A.S.A.P. Sorry for this inconvenience." In their depositions, the employees also testified that the valve at the front of the "C" pier had been turned off and that the spigot at the end of the pier was opened to drain the water. Finally, the City produced its Marina sign-in sheets and logs from the card-swipe entry to the "C" pier. The City asserted that these records show that Hebert had not swiped his entry-card at the "C" pier on December 4 and, therefore, was not at the Marina on December 4. The City asserted that the records showed that Hebert did not arrive until later in the afternoon on December 5. In support of their assertions regarding Hebert, the City also produced excerpts of Hebert's deposition testimony, in which, at certain points, he stated he did not have a "specific memory" of arriving at the Marina on the night of December 4, 2009.

The trial court held a hearing on the City's plea and then denied it. The City filed

---

[1] The City included Ferguson's general negligence claim in its plea to the jurisdiction. Even though Ferguson's general negligence claim is clearly not cognizable under the Texas Tort Claims Act because it does not involve "the operation or use of a motor-driven vehicle or motor-driven equipment" or "the use of tangible personal" property by a government employee, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1), (2) (West 2005), the trial court denied the City's plea "in its entirety," which left both Ferguson's premises liability and general negligence claims pending. Regardless, the City challenges only the premises liability basis for the plea, so we do not address Ferguson's general negligence claim on appeal.

3

this accelerated appeal.  *See id.* § 51.014(a)(8) (West 2008) (allowing a governmental unit to appeal a denial of a plea to the jurisdiction).

## II.  Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit."  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.).  Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction.  *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case.  *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam); *Morris*, 129 S.W.3d at 807.  When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court.  *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Morris*, 129 S.W.3d at 807.  We examine the pleader's intent and construe the pleadings in the plaintiff's favor.  *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Ramirez*, 74 S.W.3d at 867.  A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings affirmatively negate the existence of jurisdiction.  *Brown*, 80 S.W.3d at 555; *Ramirez*, 74

4

S.W.3d at 867.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. After the defendant "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228. This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.* We take as true all evidence favorable to the non-movant and indulge every reasonable interest and resolve any doubt in favor of the non-movant. *Id.*

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Id.* at 227–28.

### III. Applicable Law

The Texas Supreme Court has long recognized that sovereign and governmental immunity, unless waived, protect the State of Texas and its subdivisions from lawsuits for damages, absent legislative consent to sue. *See Miranda*, 133 S.W.3d at 224; *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 725–26 (Tex. App.—Corpus Christi 2007, no pet.). "The [TTCA] provides a limited waiver of sovereign immunity." *Miranda*, 133 S.W.3d at 224 (citations omitted). Section 101.021 of the TTCA waives immunity in only

5

three scenarios: (1) negligent operation or use of a motor-driven vehicle or equipment by a state employee; (2) negligent use of tangible personal property by a state employee, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (West 2005); and (3) premises defects. *See id.* § 101.021(2). Ferguson's cause of action in this case is one for premises liability.

With regard to premises liability claims, section 101.058 of the TTCA further modifies a governmental unit's waiver of immunity "by imposing the limitations of liability articulated in the recreational use statute." *Miranda*, 133 S.W.3d at 225 (citing TEX. CIV. PRAC. & REM. CODE § 101.058 (West 2005)). The recreational use statute provides, in relevant part, that "if a person enters premises owned, operated, or maintained by a governmental unit and engages in *recreation* on those premises, the governmental unit does not owe to the person a greater degree of care than is owed to a *trespasser* on the premises." TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(f) (emphases added).

"Recreation" is defined by the statute as including the following activities most relevant to this case: hunting, fishing, swimming, boating, camping, and picnicking. *Id.* § 75.001(3) (West 2011). This list is not exhaustive, and the statute also defines "recreation" as "any other activity associated with enjoying nature or the outdoors." *Id.* § 75.001(3)(L); *see City of Bellmead v. Torres*, 89 S.W.3d 611, 615 (Tex. 2002). In determining whether a particular activity is "recreational" for purposes of the recreational use statute, the relevant inquiry is what the plaintiff was doing at the time the plaintiff was injured. *Torres*, 89 S.W.3d at 614.

With regard to the duty owed to a trespasser, the law is well-established that a

6

premises owner owes a trespasser only a duty "not to injure that person willfully, wantonly, or through gross negligence." *Miranda*, 133 S.W.3d at 225 (citing *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997)). As such, "a governmental unit waives sovereign immunity under the recreational use statute and the [TTCA] only if it is grossly negligent." *Miranda*, 133 S.W.3d at 225 (citations omitted).

> The recreational use statute does not define gross negligence; it merely provides that trespasser status shall not limit the liability of a landowner "who has been grossly negligent." TEX. CIV. PRAC. & REM. CODE [ANN.] § 75.002(d). This language does not suggest that the Legislature was only concerned about a landowner's contemporaneous and active conduct as the Department has argued. Nothing in the language indicates that the Legislature intended that gross negligence should have such a special or limited meaning. Because it is not defined otherwise, we conclude that the Legislature must have intended for gross negligence to have its commonly-accepted legal meaning. [And] [b]oth this Court and the Texas Legislature have defined gross negligence as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others.

*State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006).

## III. Discussion

By one issue, the City argues that the trial court erred in denying its plea to the jurisdiction. The City argues that, at the time of her fall, Ferguson was engaged in recreation, as contemplated by the recreational use statute, and as such, is required to show that the City's actions, or lack thereof, amounted to gross negligence. The City argues that the evidence adduced in the plea proceedings precludes Ferguson from making this showing—specifically, that the Marina sign-in sheets and card-swipe entry logs disprove Hebert's testimony regarding the icy conditions and the City's knowledge of those conditions before Ferguson's fall and that the only remaining evidence, the

deposition testimony of the Marina employees, showed that they warned the tenants of the potential hazard and timely acted to ensure the tenants' safety.

## A. "Recreation"

As it will establish the level of the duty the City owed to Ferguson in this case,[2] the threshold question of our inquiry is whether Ferguson was engaged in "recreation" at the time of her accident. Citing *City of Plano v. Homoky*, the City asserts that the recreational use statute applies not only when a person is actively engaged in recreation but also when the person is in a part of the premises integral to the recreation area and is journeying to and from the recreation area. *See* 294 S.W.3d 809, 816–17 (Tex. App.—Dallas 2009, no pet.). The City argues that Ferguson was engaged in recreation under the statute because she was utilizing an area of the Marina integral to the recreational activities carried on there and that her trip to and from the shower facility was part of the recreational activity.

In response, Ferguson asserts that when she was injured, she was merely walking back to her boat from the shower. She argues that "the act of walking back to her boat after taking a shower" was a "matter of necessity, not leisure" and is not the sort of outdoor activity or hobby contemplated by the statute as "recreation." Ferguson argues that the City's interpretation would bring virtually every activity conducted at the Marina under the scope of the recreational use statute. Ferguson argues that this is contrary to

---

[2] Because Ferguson paid to use the Marina facilities, if Ferguson was not engaged in recreation at the time of her injury, the City would owe her the duty a landowner would owe an invitee on its property. *See Tex. Parks & Wildlife Dep't. v. Davis*, 988 S.W.2d 370, 374 (Tex. App.—Austin 1999, no pet.); *Univ. of Tex. Med. Branch v. Davidson*, 882 S.W.2d 83, 85 (Tex. App.—Houston [14th Dist.] 1994, no writ); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (West 2005). A landowner owes an invitee the duty to use reasonable care to reduce or eliminate a condition posing an unreasonable risk of harm about which the landowner knew or should have known. *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

the intent of the Legislature, which, in its attempt to define "recreation," contemplated a situation in which "a person is injured while present at a 'recreational area,' but is not engaged in a 'recreational activity.'"

In their analyses of Ferguson's activities at the Marina, both the City and Ferguson focus on Ferguson's discovery responses, in which she stated that her purpose for being at the Marina was "boating." Ferguson, in particular, homes in on this answer, arguing that her journey to and from the bathroom had nothing to do with boating. She reasons that if she had "walked to the Marina to purchase boating supplies, gasoline, fishing equipment, or for some other purpose reasonably related to the activity of boating," it would be possible to connect her claims to the recreational use statute. But without such purpose, her activity was one "related solely to her personal hygiene."

Our holding today is guided by neither *Homoky* nor Ferguson's arguments. Although *Homoky* involved facts somewhat similar to those here, it is sufficiently distinguishable such that we do not believe *Homoky* compels a certain outcome in this case. And the facts of this case bring Ferguson's claim squarely under the express terms of the recreational use statute and do not pose a risk of delimiting the scope of the statute.

The facts alleged in the pleadings and the evidence adduced during the plea proceedings show that Ferguson's activities at the Marina were broader in scope than suggested by the parties' narrow use of the "boating" term. It is true that her ultimate purpose was to participate in a "boating" activity—the Harbor Lights boat parade—scheduled for the next day. But in the meantime, she and her father camped

9

overnight on the sailboat. In a deposition excerpt attached to the City's reply to Ferguson's response to the plea, Ferguson agreed that the Marina's showers are for "boaters" and stated that she used the Marina showers on that morning because the family did not use the sailboat's showers when the boat was docked because there was not enough fresh or hot water. These statements belie the nature of Ferguson's activities at the Marina—a boating excursion and all of the ancillary activities associated therewith, including sleeping on the boat in preparation. In other words, camping overnight on the boat was merely one stage of the broader boating activity for which Ferguson was present at the Marina.[3] And Ferguson's use of the Marina's shower facilities, including her trip to and from the shower, was an inseparable part of that activity. Ferguson cannot avoid the application of the statute by removing those few moments from the broader context of her activities at the Marina.

*Homoky* is distinguishable and not controlling. In *Homoky*, the plaintiff, after finishing a round of golf and turning in her scorecard in the clubhouse, tripped as she was walking through the lobby. The plaintiff had already stowed her golf clubs in her car and returned her golf cart. She was walking toward the exit of the building when she tripped and injured herself. In this case, as described above, Ferguson was still engaged in recreational activity. She was not exiting the Marina at the end of a boating excursion. She was using the shower facilities as a part of her broader boating-camping activities.

Regardless, we do not believe *Homoky* announces any sort of bright-line rule as to

---

[3] We express no opinion regarding the recreational use statute vis-á-vis persons who permanently reside on their boats. There are no alleged facts and no evidence in the record before us regarding the Marina's policies on tenants permanently living on their boats. Neither do the facts of this case raise that scenario.

10

when a claimant is or is not engaged in recreation.[4]   Rather, as we have done in this case, the *Homoky* court engaged in a fact-specific analysis and ultimately concluded that when the plaintiff tripped in the clubhouse lobby, she was still engaged in recreational activity under the statute.[5]   So, in sum, we conclude that the recreational use statute applies under the facts of this case.   At the time of her injury, Ferguson was engaged in boating and other related activities "associated with enjoying nature or the outdoors." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3); *Torres*, 89 S.W.3d at 614.   Because Ferguson was engaged in recreation at the time of her injury, the City owed her the duty it

---

[4] We express no opinion on the analysis or holding by the Dallas court in *Homoky*, other than that it does not guide the disposition of this case.

[5] Likewise, we note that other courts have come to differing conclusions on the question of recreational activity after engaging in similar fact-intensive analyses.   In the following cases, courts have concluded that plaintiffs who were at what would generally be considered a recreational facility were nonetheless not engaged in recreation at the time of their injuries.   *See Vidrine v. Ctr. for the Performing Arts at the Woodlands*, No. 09-12-00378-CV, 2013 WL 5302654, at *4–5 (Tex. App.—Beaumont Sept. 19, 2013, pet. denied) (mem. op.) (holding that the plaintiff was not engaged in recreation where her injury occurred after leaving a concert at the Woodlands Pavilion "when she fell down a set of steps along the Woodlands Waterway," an area between the Pavilion and the lot where she parked her car); *Univ. of Tex. at Arlington v. Williams*, No. 02-12-00425-CV, 2013 WL 1234878, at *3 (Tex. App.—Fort Worth Mar. 28, 2013, pet. filed) (mem. op.) ("Neither spectating at a sporting event nor exiting the premises after spectating is like the activities listed as recreation under the recreational use statute.   Nor do these activities fall within the section's catchall of 'any other activity associated with enjoying nature or the outdoors.'"); *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *7 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g) (holding that guest at wedding held in a city garden was not engaged in recreation when she tripped on a poorly-lit pathway and injured herself, reasoning as follows:   "A wedding is not the type of activity in which people engage assuming a risk of injury from physical activity. Thus, we do not think that the wedding transforms from a ceremony to recreation simply because it occurred outside."); *but see Sam Houston State Univ. v. Anderson*, No. 10-07-00403-CV, 2008 WL 4901233, at *3 (Tex. App.—Waco Nov. 12, 2008, no pet.) (mem. op.) (holding that sitting on bleachers at an outdoor baseball stadium and watching state university baseball game was a form of recreation under recreational use statute).   Although, again, we do not believe these cases create any sort of bright-line rule, we find their facts distinguishable from the case before us.   In *Vidrine*, the plaintiff was leaving the recreational area at the time of her injury, not still actively engaging in recreation like Ferguson.   In *Sullivan*, the plaintiff was merely attending an outdoor wedding, not actively engaged in the outdoor activities of boating and camping like Ferguson.   The only true split in authority in the above cases comes from *Williams* and *Anderson*.   In *Williams*, the Fort Worth court found no recreational activity where a plaintiff was injured while being a spectator at a sports event.   The Waco court concluded the opposite in *Anderson*, *i.e.*, that the spectator plaintiff was engaged in a recreational activity.   But both spectator cases involve facts and a type of recreational activity completely different from the activity in this case.   So we express no opinion on that split in authority as it has no bearing on the outcome of this case.

11

owed a trespasser—to not injure that person willfully, wantonly, or through gross negligence. *See Miranda*, 133 S.W.3d at 225.

## B. Pleadings and Evidence of Gross Negligence

Having concluded that the recreational use statute applies, we now turn to whether Ferguson has sufficiently shown gross negligence on the part of the City to defeat the City's plea. We believe that she has.

In her petition, Ferguson alleged the following:

> On the night of [December 9, 2009], one of the Defendant's marina employees opened a water faucet at the end of the C Dock. The water ran out of that faucet all night and froze on the surface of the dock due to weather conditions that night. The Plaintiff was not aware that the faucet had been turned on, or that the dock had iced over as a result of the open water faucet. On the morning of December 5, 2009, the Plaintiff left her boat and slipped on the iced over dock. As a result of that fall, the Plaintiff sustained serious personal injuries.

Ferguson later provided evidence to the trial court that the City had actual knowledge of the ice on the pier before Ferguson's injury. In his deposition, Hebert testified that he observed the spigot near the gate of the "C" pier trickling water late in the evening on December 4. He then testified that at approximately 6:30 a.m. on December 5, 2009, he observed that an ice sheet had formed near the gate and shortly thereafter called Marina officials to tell them about the ice.

In response, the City produced its Marina sign-in sheets and logs from the card-swipe entry at the "C" pier. The sign-in sheets showed that Hebert had not checked in with Marina officials until the afternoon of December 5. The card-swipe entry log did not contain an entry showing that Hebert had swiped his card on December 4. The City also produced an excerpt of Hebert's deposition, in which he stated that he did not have a

"specific memory" of arriving at the Marina on December 4. Finally, the City produced evidence that its employees had posted a warning sign regarding draining water lines in preparation for the freeze. The City also produced deposition testimony by its employees that the spigot near the gate of the "C" pier had been turned off on December 4.

The foregoing dispute involved facts that touch on both the merits and the subject-matter jurisdiction inquiry. *See Kirwan*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 228. Thus, in producing its evidence, the City met its burden at the plea stage to "assert and support with evidence" that the City did not have actual knowledge of the icy conditions and, accordingly, that the trial court lacked subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 228.

In response to the City's evidence, Ferguson produced further excerpts of Hebert's deposition, in which he stated it was his habit to come to Corpus Christi from San Antonio on Friday nights. Hebert stated he rarely made one-night trips to the coast, that he "wouldn't have bothered going to the coast if I wasn't getting there until Saturday afternoon." Hebert stated that when he arrives on Friday evenings, the Marina office is closed. In those situations, Hebert stated, "[i]f you call the marina patrol, if they are at the office, fine. If they're out on patrol, it could be an hour or so. It's not uncommon to check in the next day." In response to questions by defense counsel about his specific memory of the weekend in question, Hebert stated, "It's one of those that just [because] of my habit I truly believe I was there that Friday night. . . . It is a rare and I'm talking once in three years that I would bother coming to the [coast] on a Saturday just to spend one

13

night."   Finally, Ferguson produced her deposition testimony and her father's deposition testimony that they never saw a warning sign.

Taking as true all evidence favorable to Ferguson and indulging every reasonable inference and resolving any doubt in her favor, we conclude that, in producing the foregoing evidence, Ferguson met her burden to show a disputed material fact regarding the City's actual knowledge of the icy conditions, *i.e.*, that the City had subjective knowledge of an extremely risky condition and that they did not act to timely remedy that condition.   *See id.* at 225, 227–28; *see also Shumake*, 199 S.W.3d at 287.   The testimony of the Marina employees directly conflicted with the testimony of Hebert, Ferguson, and Ferguson's father and, as such, created an issue for the fact finder.   *See Miranda*, 133 S.W.3d at 227–28.   In light of this, we cannot conclude that the trial court erred in denying the City's plea to the jurisdiction.   *See id.* at 226; *Morris*, 129 S.W.3d at 807.

The City's issue is overruled.

## IV.   Conclusion

We affirm the order of the trial court denying the City's plea to the jurisdiction.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 6th
day of February, 2014.

14