

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00600-CV

———————————————

THE CITY OF KELLER, Appellant

V.

MICHAEL DIPAOLO, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-360361-24

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant The City of Keller (the City) appeals from the trial court's order denying the City's plea to the jurisdiction on the grounds of governmental immunity under Section 101.101 of the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code § 101.101(a), (c). In a single issue, the City argues that the trial court erred by denying its plea because Appellee Michael DiPaolo, who sued the City after he was injured at the City's recreational facility, failed to plead and prove that the City was given notice of his claims within the six-month period required by the TTCA. Specifically, the City asserts that DiPaolo failed to provide formal written notice of his claims and that the City lacked "actual notice" of his claims in lieu of the statutory notice requirements. Because we conclude that the City had actual notice of DiPaolo's claims, we affirm the trial court's order.

## I. Background

In 2022, the City owned and operated the Keller Senior Activities Center, which offered various recreational and sports activities to members fifty-five years of age and older. Among the sports offered by the City at its activities center was pickleball; members played pickleball not on a pickleball court but on one of the activities center's basketball courts. Behind the back line of the court was an unpadded section of cinderblock wall that formed the back of the gymnasium containing the repurposed basketball court. It was on this court that DiPaolo, a member at the activities center, sustained his injuries.

2

Several months before DiPaolo was injured at the activities center, the City was notified of injuries sustained by other members while playing pickleball. For example, in June 2022, one member fractured two ribs when she collided with the unpadded wall after falling over a bench situated along the wall. In September 2022, that injured member emailed the mayor and city council warning that before her fall, "numerous people" had already been injured playing pickleball at the activities center. The City's Director of Community Services replied that the City had conferred with an architect and had concluded that the recommended measure of adding pads to the unpadded wall was not "justified" at that time.

On December 27, 2022, DiPaolo was playing pickleball at the activities center when he "tripped" and "fell face forward" into the unpadded wall and then fell back onto the ground. DiPaolo suffered severe and debilitating injuries—the activities center's staff observed "an opening on [the] top/back of [DiPaolo's] head" and blood and noted that he "could not feel [his] hand, arms, legs, or feet below [the] neck." DiPaolo was subsequently diagnosed with traumatic quadriplegia resulting from his injuries.

In response to DiPaolo's being injured, the City—through its employees—compiled a "General Public Accident/Incident Report." In the report, the City noted the facts of DiPaolo's injuries and how he was injured and presented "suggestions or recommendations to prevent similar incidents," under which it listed "[p]added wall."

Approximately two hours after DiPaolo was injured, a member of the activities center's advisory board emailed the mayor and city council to report the incident. The advisory board member noted that she had visited the activities center that very morning to address the padding "problem," and when she asked the activities center's manager to include the padding as "an agenda item," the manager told her that she would include it but that the proposal had previously been discussed and turned down. The member stated in her email that her husband had been playing pickleball at the activities center "since it opened" and had "personally witnessed three or four accidents." In her email, she further urged the City's officials to implement an "emergency resolution" to provide funding for the padding on the walls, asserting that the City was "obligated" to make the courts safe.

A few days after DiPaolo was injured, the member who had broken her ribs in June 2022 again emailed City officials expressing that she was "sure [they] are aware" of DiPaulo's "sustain[ing] a very serious injury to his head when he hit the concrete wall" and that she felt that "injuries of this nature could have been avoided." The Director of Community Services replied that the City "is obtaining quotes for the purchase and installation of additional padding for the west wall of the gym." Additionally, the City preserved video surveillance footage of DiPaolo's being injured. It preserved the footage for two years.

In March 2024, DiPaolo delivered a "Notice of Representation and Preservation Notice" to the City. In December 2024, DiPaolo filed his lawsuit against

4

the City, alleging claims for premises liability, negligence, and gross negligence. The City answered and filed its plea to the jurisdiction, alleging that it was immune from suit under the TTCA due to DiPaolo's failure to provide notice of his claims. After hearing the parties' arguments, the trial court denied the City's plea, and the City appealed.

## II. Discussion

In its sole issue, the City asserts that it is immune from suit under the TTCA due to DiPaolo's failure to plead and prove that the City had "actual notice" under Section 101.101(c). Specifically, the City contends that DiPaolo failed to present sufficient evidence to show that the City was subjectively aware that it had acted with gross negligence.

### A. Standard of Review and Applicable Law

Immunity deprives a trial court of subject-matter jurisdiction to hear a controversy against a governmental entity. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018). Municipalities such as the City are governmental entities immune from suit and liability absent a clear legislative waiver of immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019).

The TTCA provides a limited waiver of immunity only if a governmental unit receives either formal or actual notice of a claim against it no later than six months after the day the incident giving rise to the claim occurred. Tex. Civ. Prac. & Rem. Code § 101.101(a), (c). Unless the governmental unit receives formal or actual notice,

5

the TTCA does not waive the governmental unit's immunity from suit, and the trial court lacks subject-matter jurisdiction. *See Reyes v. Jefferson County*, 601 S.W.3d 795, 797–98 (Tex. 2020) ("Notice is a prerequisite to subject-matter jurisdiction under the TTCA . . . ."). Notice is thus a jurisdictional prerequisite to suit under the TTCA. *Id.* at 798.

A governmental unit may challenge the trial court's lack of subject-matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637–38 (Tex. 1999). The trial court may rule on the plea as a matter of law if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). When the plea challenges jurisdictional facts, the standard of review will mirror that of a traditional summary judgment; if the plaintiff's factual allegations are challenged with supporting evidence necessary to the consideration of the plea, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject-matter jurisdiction and to avoid dismissal. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). We review a trial court's jurisdictional ruling de novo. *Id.* at 805.

### B. Actual Notice Under the TTCA

Notice is "a means of alerting governmental entities of the need to investigate claims." *Worsdale*, 578 S.W.3d at 64. It "allows for swift abatement of dangerous conditions or practices, fosters early termination of litigation through settlement of

meritorious claims, and provides sufficient notice of potential claims to enable governmental entities to make proper budgeting and tax decisions." *Id.* Indeed, the purpose of the TTCA's notice requirement is to ensure prompt reporting of claims, which enables governmental units to "gather information necessary to guard against unfounded claims, settle claims, and prepare for trial." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

Although formal notice is the default option under the TTCA, *see* Tex. Civ. Prac. & Rem. Code § 101.101(a), the formal notice requirement does not apply if the governmental unit has actual notice, *see id.* § 101.101(c). Actual notice can replace formal notice if the governmental unit has subjective awareness of (1) a death having occurred, the claimant having received some injury, or the claimant's property having been damaged; (2) the governmental unit's alleged fault in producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Reyes*, 601 S.W.3d at 798; *see* Tex. Civ. Prac. & Rem. Code § 101.101(c).

The supreme court has clarified that actual notice requires the governmental unit need only have subjective awareness of fault "as ultimately alleged by the claimant." *Worsdale*, 578 S.W.3d at 65; *Harris Cnty. Sports & Convention Corp. v. Cuomo*, 604 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2020, no pet.). In other words, there must be subjective awareness connecting the alleged governmental conduct to causation of an alleged injury in the manner asserted by the plaintiff, a

7

standard that is necessarily subjective "because lack of formal notice is excused only by actual, not constructive, notice." *Worsdale*, 578 S.W.3d at 65.

Subjective awareness of alleged fault requires neither adjudication of liability nor confession of fault. *Id.*; *see Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010) ("Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed."). The question of subjective awareness is not whether the governmental entity believes it is liable, nor is it whether the entity should have made the connection between injury and responsibility as alleged. *Worsdale*, 578 S.W.3d at 66–67. Rather, the question is whether the governmental unit made the connection between its act or omission and the plaintiff's alleged harm or had knowledge that the connection had been made. *Id.*

When actual-notice evidence is disputed, a genuine issue of material fact arises. *Id.* at 66. When a jurisdictional fact issue is intertwined with the merits, the trial court cannot grant the plea, but when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations that are supported by sufficient evidence. *Id.* However, actual notice can often be determined as a matter of law, "even when subjective awareness must be proved, if at all, by circumstantial evidence." *Id.* (internal quotation marks omitted).

8

## C. The City's Actual Notice of DiPaolo's Claims

Neither party contests that DiPaolo did not provide formal notice, nor do the parties contest whether the City knew (1) that the injury had occurred and (2) that DiPaolo was the party injured. The only element of actual notice contested by the City is whether it was subjectively aware of its alleged fault as ultimately alleged by DiPaolo. We conclude that the facts and evidence are sufficient to make such a showing.

The City had access to official reports from the police department and the fire department and to its own "General Public Accident/Incident Report" generated by staff shortly after DiPaolo was injured. While these reports, standing alone, may not be sufficient to establish the City's subjective awareness of fault, *see Tenorio*, 543 S.W.3d at 778, the City also had knowledge of its role in DiPaolo's injuries beyond these routine reports. First, within hours of DiPaolo's injuries, the City's highest officials (1) had been notified of DiPaolo's injuries and of the role the lack of wall padding had in their severity and (2) had been advised—by a member of its own advisory board—of the necessity of installing wall padding to prevent similar injuries in the future. Second, one week after DiPaulo's injuries and in response to the activities center member who wrote to the City "to advocate for [the City] to reconsider" its position that wall pads were not "justified," the City's officials verified that they were making efforts to install the wall padding. These communications show that the City made the connection between DiPaolo's injuries and its previous

9

decision not to install wall padding or, at the least, that the City had knowledge that the connection had been made. *See Reyes*, 601 S.W.3d at 798 ("Reyes's communications with [the county's claims administrator] coupled with its acknowledgement, investigation, and denial of his claim establish the [c]ounty's subjective awareness that Reyes was claiming the [c]ounty was at fault in the manner ultimately alleged in this lawsuit."); *Worsdale*, 578 S.W.3d at 66–67 (concluding that actual notice was established when evidence showed that, almost immediately after motorcycle accident, "the [c]ity knew of allegations that it was responsible for maintaining a road and that the failure to maintain the road had been identified as a contributing factor to the injuries that provide the basis for th[e] lawsuit").

Further, it is clear that the purpose of the notice requirement has been met. The City was subjectively aware that other members had suffered injuries due to the lack of sufficient padding on the walls around the court and that the lack of sufficient padding also contributed to DiPaolo's injuries, as he ultimately alleged in this suit; therefore, the City had the opportunity to investigate the incident, generate reports, and preserve video evidence necessary "to guard against unfounded claims, settle claims, or prepare for trial." *See Cathey*, 900 S.W.2d at 341. And the City's subjective awareness allowed it to provide for "swift abatement of [the] dangerous condition" of the unpadded wall. *See Worsdale*, 578 S.W.3d at 64.

The facts and evidence conclusively establish that the City had subjective awareness of its alleged fault in producing or contributing to DiPaolo's injuries.

Accordingly, we conclude that the City had actual notice of DiPaolo's claims within the meaning of Section 101.101(c) of the TTCA.

## D. The Recreational Use Statute Does Not Modify Actual Notice

The City contends that the issue of actual notice must be viewed through the lens of gross negligence: "[T]here is not any evidence to suggest that [the City] had actual notice of the incident sufficient to meet the requirements of [Section] 101.101(c), particularly when viewed through the lens of . . . case law on the issue of 'actual notice' and the applicable Recreational Use Statute's gross negligence standard." It argues that there is no evidence establishing that it had subjective awareness of its alleged fault because the facts fail to establish that it owed a duty to DiPaolo or, alternatively, if it did owe him a duty, that it violated its duty in a manner constituting gross negligence as required by the Recreational Use Statute. *See* Tex. Civ. Prac. & Rem. Code §§ 75.001–.003. While the City is correct that the Recreational Use Statute modifies the TTCA's waiver of immunity in a recreational use context, it incorrectly asserts that the Recreational Use Statute also modifies Section 101.101's notice requirements. Nothing in the text of either Chapter 75 or Section 101.101 contains any provision suggesting that the Recreational Use Statute modifies, waives, or otherwise affects the notice requirement.

Generally, the Recreational Use Statute limits the liability of all landowners—public and private—who permit others to use their property for recreation. *Univ. of Tex. v. Garner*, 595 S.W.3d 645, 648 (Tex. 2019). Such landowners are effectively

immune from ordinary negligence claims, owing those who use their property for recreation only the duty to not injure them intentionally or through gross negligence. *Id.* As applied to government landowners, the statute's effect is to limit the scope of their liability by classifying recreational users as trespassers and requiring proof of gross negligence, malicious intent, or bad faith to sustain a claim against them. *Id.*; *see* Tex. Civ. Prac. & Rem. Code §§ 75.003(g) ("To the extent that this chapter limits the *liability* of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101, this chapter controls." (emphasis added)), 101.058 (similar).

Section 101.101's notice requirement, on the other hand, is not a liability-limiting provision but is a jurisdictional prerequisite to suit. *See* Tex. Civ. Prac. & Rem. Code § 101.101; *Reyes*, 601 S.W.3d at 798. A plaintiff relying on the TTCA to sue a governmental unit for recreational injuries must satisfy the notice requirement before the Recreational Use Statute comes into play, if at all. *See* Tex. Civ. Prac. & Rem. Code § 75.003(f) (noting that Chapter 75 does not function as a waiver of immunity). Thus, while it would be proper to apply the Recreational Use Statute as a modification of liability standards—as raised in a plea to the jurisdiction based on a failure to state a claim—it is not proper to apply the statute as a modification of the notice requirements of Section 101.101. *Cf. Univ. of Tex. at Arlington v. Williams*, 455 S.W.3d 640, 644–48 (Tex. App.—Fort Worth 2013) (treating the Recreational Use Statute and

Section 101.101's notice requirement as distinct, independent inquiries), *aff'd*, 459 S.W.3d 48 (Tex. 2015).

The City relies on *Garner* to support its contention that the Recreational Use Statute required actual notice of gross negligence, but this reliance is misplaced. In *Garner*, the plaintiff was injured when she was struck on her bicycle by a vehicle driven by a University of Texas at Austin employee on a street within a university-owned apartment complex. *Garner*, 595 S.W.3d at 648. The university filed a plea to the jurisdiction for failure to state a claim, alleging that the plaintiff had failed to produce evidence of conduct beyond ordinary negligence and therefore had failed to allege the gross negligence required to waive immunity under the TTCA when the Recreational Use Statute was implicated. *Id.* The supreme court determined that the university's immunity had not been waived because the plaintiff had failed to state a claim upon which relief could be granted; that is, the plaintiff had failed to allege any claim involving gross negligence by the university that would waive immunity. *Id.* at 649, 651. The supreme court did not, as the City suggests, impose onto Section 101.101(c) a requirement that the university must have subjective knowledge of gross negligence when the Recreational Use Statute is implicated, as the City asks us to do in this case. *See generally id.* Indeed, the City cites no case law—and we have found none— imposing such a requirement, and we decline to extend the Recreational Use Statute's scope to Section 101.101.

## III. Conclusion

Because we conclude that the City had actual notice of DiPaolo's claims, we affirm the trial court's order denying the City's plea to the jurisdiction.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 25, 2026

14