# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0338

════════════

UNIVERSITY OF TEXAS AT ARLINGTON, PETITIONER,

v.

SANDRA WILLIAMS AND STEVE WILLIAMS, RESPONDENTS

══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

══════════════════════════════════════════════════

JUSTICE JOHNSON, joined by JUSTICE BROWN, concurring and dissenting.

I concur in the Court's judgment as to the Williamses' gross negligence claim, but for two reasons I dissent from its judgment as to their ordinary negligence claim. The first reason I dissent is based on the language of the recreational use statute by which JUSTICE DEVINE reaches his decision in his plurality. The second, which should be the first because it implicates the University of Texas at Arlington's (UTA) immunity but which is not addressed by the plurality, is based on the interaction of the recreational use statute and the Texas Tort Claims Act as noted by JUSTICE BOYD in his concurring opinion. TEX. CIV. PRAC. & REM. CODE §§ 75.002 (recreational use statute), 101.021(2) (Tort Claims Act).

As to the first reason I dissent—the language of the statute—the recreational use statute includes *bird watching* among several activities listed as being "recreation." *Id.* § 75.001(3)(I). Yet,

despite the statute specifying that "recreation" includes persons engaged in outdoor activities "such as" the listed activities and separately specifying that it also includes persons engaged in "any other activity associated with enjoying nature or the outdoors," *id.* § 75.001(3)(L), the plurality concludes that the Legislature intended that a parent engaged in outdoor *child* watching and associated activities is not included. ___ S.W.3d ___, ___. The language of the statute does not support this conclusion; the principle of *ejusdem generis* does not support it; and I do not believe the Legislature intended it.

The plurality identifies the issue in this appeal as "whether the statutory term 'recreation' reasonably includes competitive sports and their spectators" when those subjects are not listed in the recreational use statute, and concludes that it does not. *Id.* at ___. In reaching this conclusion, the plurality notes that words in a statute are generally interpreted according to their common meaning unless a contrary intention is apparent from the statute's context. *Id.* at ___ (citing *City of Houston v. Bates*, 406 S.W.3d 539, 544 (Tex. 2014)). The plurality recognizes that applying "recreation's" ordinary broad meaning—refreshment from work or a diversion—would include both competitive sports and spectating within its scope. *Id.* ___ (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 985 (1984)). The plurality nevertheless concludes that this definition should not be applied because the Legislature defined "recreation" more precisely through a list of activities, and those do not include the activities of a mother who watched her daughter's soccer game and then was injured when a gate swung open while she was in the process of waiting for and signing her daughter out after the game. *Id.* at ___. I disagree with that conclusion.

The recreational use statute specifies that the term "recreation" means activities "such as" those it lists, clearly indicating legislative intent that the list is non-exclusive. TEX. CIV. PRAC. & REM. CODE § 75.001(3). The statute then enlarges even on its broadly inclusive "such as" language by providing in a discrete subdivision that "recreation" means an activity "such as . . . *any other activity associated with enjoying nature or the outdoors*." *Id.* § 75.001(3)(L) (emphasis added). Not surprisingly, this Court has construed that language as reflecting legislative intent for the statute to encompass activities not specifically listed, including swinging on a swing. *City of Bellmead v. Torres*, 89 S.W.3d 611, 615 (Tex. 2002). In *City of Bellmead* the Court said that "[w]hile the Recreational Use Statute does not specifically list swinging as an example of recreation, it is certainly within the type of activity 'associated with enjoying … the outdoors.'" *Id.* But according to the plurality, *City of Bellmead* does not control here because "[t]he enjoyment of nature or the outdoors is thus a significant part of playground activity, but is not integral to the enjoyment of competitive sports." ___ S.W.3d at ___. The plurality attempts to distinguish enjoying "nature" and the "outdoors" from organized soccer by saying that "nature" and "outdoors" equate to that part of the world removed from human habitation, while gathering in a stadium to watch soccer is not removing oneself from human habitation, but rather celebrating and embracing it. But there is no contention or evidence that Williams either was in, or would have been in, UTA's stadium or by the gate where she fell, independent of her daughter's activities. What Williams was embracing was not human habitation, but her daughter's participation in outdoor athletic activities, just as parents embrace their children's participation in all the outdoor activities listed in the statute. A parent's enjoyment of nature or the outdoors for the activities of visiting a playground with a child or going

3

boating, camping, picnicking, hiking, or waterskiing with a child is hard to differentiate from what Williams was doing when she was injured: participating to the extent she could in her daughter's outdoor activities.

The plurality also distinguishes Williams's attending her daughter's soccer game in a stadium from a parent's attending a child's playdate at a playground by implicitly categorizing playing—and spectating—at a playground as enjoying "nature" which the plurality says is "that part of the physical world that is removed from human habitation." ___ S.W.3d at ___. But by doing so, the plurality ignores the reality that most playgrounds are designed to be in, and are constructed in or close to, areas inhabited by humans; otherwise the playground improvements would not be fully enjoyed and used.

The plurality points to no language in the statute differentiating between competitive and non-competitive activities. That is because nothing in the statute demonstrates legislative intent to single out and exclude competitive sports from its reach. Moreover, several of the listed activities such as fishing, swimming, boating, off-road driving, water sports, bicycling, disc golf, and radio-controlled airplane flying typically *include* both non-competitive and competitive aspects.

Finally, the statute does not contain any language differentiating team sports and activities from non-team sports and activities. And certainly many of the listed activities such as swimming, bicycling, water sports, boating, and fishing include team competitions. To be sure, some teams may have two or three members, some may have five or six members, and others may have ten or eleven members or more. But it is simply part of the human experience for leisure-time activities to induce

4

competitions, and competitions inevitably lead to teams. And the statute does not exclude either from its broad language.

As to Williams being a spectator or picking her daughter up after the game, the Legislature could hardly have intended to include only adult participants in activities covered by the statute without at least some language in the statute saying so. Yet that would be the effect of excluding parents and other persons who make children's participation in outdoor activities possible. Parents and adults typically take children to their activities, sign them in, and remain to mix and mingle with other parents while enjoying the outdoor activities as much as (and possibly more than) the children, then sign the children out and pick them up to take them home—just the type of activity in which Williams was engaged. To hold that Williams is excluded because she was either a spectator as to her daughter's outdoor sports activities or in the process of picking her daughter up after the game, both of those being activities closely "associated with" the daughter's soccer game, reads the language of § 75.001(3)(L) out of the statute. The holding effectively means that the statute does not cover parents engaging in activities associated with their children's participation in outdoor sports, such as taking the children to practices, games, and even simple play dates at a park where there are swings and other improvements for the children to enjoy, along with signing them in or out of those activities as part of a security process, or sitting in stands or standing around the field spectating and socializing with other parents and participants (and occasionally offering coaching advice) while waiting to take their children home.

The plurality argues that spectating at organized sporting activities is distinguishable from bird watching because the landowner who opens property for bird watching opens the property in

5

its natural state and does not build a stadium or otherwise make improvements for that purpose. But nothing in the statute says or indicates that it applies only when land is in a natural state without improvements. Here, Williams's injury was caused by an improvement to UTA's land—a gate that swung open. Land that is fit for, and open for, birdwatching, hunting, camping, swimming, cycling, and other activities listed in the recreational use statute will almost invariably have some type of improvements, including fences, gates, and swings. The plurality's narrowing of the statute by effectively reading words into it will bring into question the statute's application to injuries causally related to various types of improvements to land even though the activities are otherwise covered by the statute. So in my view, the fact that UTA's property included improvements and the Williamses' claims arose from one of them, does not exclude the claim based on language in the statute. Nor is it a distinguishing factor from the activities listed any more than the statute distinguishes children playing soccer from children swimming, diving from various heights of diving boards, or playing water polo in teams at an outdoor swimming pool—surely an improvement to a premises—or children at a lake beach area cordoned off for swimming and water sports, and the parents who take them there, sign them in and out, and watch over them.

Simply put, people enjoy many kinds of outdoor activities in different ways, in individual, group and team activities, in non-competitive and competitive activities, and even in different types of weather. The activities for the most part take place on land that has improvements and the activities frequently have associated requirements such as registering, signing in and out, and in the case of children, having parents or responsible adults perform those requirements. The Legislature has not specified that in order for activities to come within the recreational use statute, the activities

must be for enjoying the outdoors in limited, certain ways such as non-competitive, non-team activities, or on land with limited or no improvements. The statute only specifies that the activity must be recreational "such as" in the ways listed in the statute, including the specific subsection specifying "any other activity associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). The plurality narrows the scope of what it concedes is broad statutory language. But narrowing the scope of statutory language, even if it is as broad as the language in § 75.001(3)(L), is not a judicial prerogative. This Court has explicated simple rules for reading language into or out of a statute—to effect clear legislative intent, or to avoid a statute's having an arbitrary, absurd or nonsensical effect. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 54 (Tex. 2014) (interpreting a statutory testing requirement to include a relevance requirement not included in the statutory language in order to yield a non-arbitrary, non-absurd result); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 630 (Tex. 2008) ("[C]hanging the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."). In my view there is no need to read words into or out of the recreational use statute to effect clear legislative intent or to avoid an arbitrary, absurd, or nonsensical result.

JUSTICE BOYD raises two issues that bear addressing. As to the first, he concludes that different canons of statutory construction should be used to decide the issue because the recreational use statute's primary purpose is to abrogate or impair a common law cause of action. Without addressing the merits of his reasoning, I disagree with this approach procedurally because the question of the recreational use statute's constitutionality or the effect of its impairment of a common law right was not raised in the lower courts, has not been raised, briefed, or argued by the parties

7

here, and is not an issue properly raised by the Court sua sponte. I would not decide the case on an argument not made by the Williamses without at least identifying the issue and requesting supplemental briefs so UTA has an opportunity to address it, which the Court has not done.

As to the second, which is the second reason I dissent, JUSTICE BOYD observes that the question of the interaction of the recreational use statute with the Williamses' common law cause of action is complicated by the fact that UTA's immunity—an issue implicating subject matter jurisdiction which we must raise sua sponte even if not raised by the parties—would shield it from the claim but for the Tort Claims Act's waiver of immunity. The complication arises because the recreational use statute specifies that it prevails over the Tort Claims Act to the extent of any conflict. TEX. CIV. PRAC. & REM. CODE § 75.003(g). The recreational use statute precludes the Williamses' ordinary negligence claim against UTA that would otherwise be allowed by the Tort Claims Act *if* the recreational use statute encompasses the claim. As amply demonstrated by the opinions in this matter, whether the claim is encompassed by the recreational use statute is at best unclear, and the Legislature has instructed that a statutory waiver of immunity must be clear and unambiguous in order to be effective. TEX. GOV'T CODE § 311.034. So, even if the plurality is correct in interpreting how the recreational use statute would apply if UTA did not have immunity, the statutory interaction compels a different result as to the Williamses' ordinary negligence claim because UTA's immunity for that type of claim has not been clearly and unambiguously waived.

I would hold that the recreational use statute applies to the Williamses' ordinary negligence claim, would reverse the court of appeals' judgment as to that claim, and dissent from the Court's judgment otherwise. However, I agree with the court of appeals' analysis and holding regarding the

8

claim that UTA was grossly negligent and join the Court's judgment affirming the appeals court's remand of the gross negligence claim to the trial court.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** March 20, 2015