# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 13-0338

═══════════════

UNIVERSITY OF TEXAS AT ARLINGTON, PETITIONER,

v.

SANDRA WILLIAMS AND STEVE WILLIAMS, RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued October 9, 2014**

JUSTICE DEVINE announced the judgment of the Court and delivered an opinion, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, and JUSTICE LEHRMANN joined.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE WILLETT joined.

JUSTICE BOYD filed a concurring opinion.

JUSTICE JOHNSON filed an opinion, concurring in part and dissenting in part, in which JUSTICE BROWN joined.

The recreational use statute provides limited protection to landowners and occupants who open their property for public recreational purposes. *See* TEX. CIV. PRAC. & REM. CODE §§ 75.001-.007 (the recreational use statute). When applicable, the statute effectively immunizes the landowner or occupant from ordinary negligence claims associated with the property's recreational use by requiring the plaintiff to establish gross negligence. *See id.* § 75.002(c)-(d), (f). The statute, however, only applies to certain recreational uses that it defines through a list of activities it considers to be "recreation." *Id.* § 75.001(3).

The question here is whether the statute's recreational-activity list reasonably includes a spectator at a competitive-sports event. The court of appeals concluded that this activity was too dissimilar to the others on the list to be included and accordingly held it was not "recreation" under the statute. ___ S.W.3d ___, ___ (Tex. App.—Fort Worth 2013) (mem. op.). We agree. Although members of this Court have different views on the nature of the injury-producing activity in this case, we agree that the recreational use statute does not bar the underlying action. The court of appeals' judgment is accordingly affirmed.

I

Sandra Williams and her husband sued the University of Texas at Arlington (UTA) for injuries Williams sustained when she fell at Maverick Stadium. The stadium is a 12,500 seat, multipurpose facility located on the western edge of the UTA campus. It served as UTA's football stadium through the 1985 season, after which the university gave up its football program. The stadium is now used by the university's track-and-field teams and is also leased to the Arlington Independent School District for football games and other events. The Williamses were at the stadium to watch their daughter's high school soccer game.

After the game, Williams walked down the stadium stairs to wait for her daughter, stopping at a guard rail that separates the stands from the playing field. The stands are elevated above the field, but a gate in the railing provides access to the field when portable stairs are in place. On this occasion, the stairs were not there, and the gate was closed.

The gate's latch had previously broken off, but the gate was secured with a chain and padlock. While waiting for her daughter, Williams leaned against this gate, which unexpectedly opened. Williams fell five feet to the artificial-turf field below, injuring a rib and her left arm.

In her premises liability suit against the university, Williams alleged that UTA was negligent and grossly negligent in securing the gate with a chain and lock it knew to be inadequate, and in failing to maintain the gate and repair its broken latch. UTA responded with a general denial, a plea to the jurisdiction, and a motion to dismiss, asserting sovereign immunity and the recreational use statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 75.003(g), 101.058 (providing that to the extent the recreational use statute applies, it controls over the Tort Claims Act).

Williams argued that the recreational use statute did not apply because she was not engaged in a recreational activity at the time of the accident. In the alternative, she argued that, if the statute applied, UTA's plea and motion to dismiss should still be denied because she had raised a fact question regarding UTA's gross negligence. When applicable, the recreational use statute limits the liability of landowners by requiring proof of their gross negligence, malicious intent, or bad faith in the premises liability case. TEX. CIV. PRAC. & REM. CODE § 75.002(d).

The trial court denied UTA's plea and motion, apparently agreeing with Williams' arguments. The court of appeals affirmed. ___ S.W.3d ___. UTA appealed. We granted UTA's petition to consider whether attending a soccer game as a spectator is a recreational activity under the recreational use statute.

II

We begin, however, with our own jurisdiction, which is limited when the appeal is from an interlocutory order, such as the trial court's order here denying UTA's plea to the jurisdiction. UTA, a state university, argues that we have jurisdiction under section 51.014(a)(8) of the Civil Practice and Remedies Code, which authorizes an interlocutory appeal from the grant or denial of "a plea to the jurisdiction by a governmental unit" such as UTA. Interlocutory appeals, however, are generally

3

final in the court of appeals unless there is a dissent in that court or a conflict with another decision. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 656 (Tex. 2007); see also TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(b)(3), (c).

UTA argues that the court of appeals' decision here conflicts with one of our prior decisions. *See City of Bellmead v. Torres*, 89 S.W.3d 611 (Tex. 2002). In *City of Bellmead*, we concluded that the recreational use statute applied to the user of playground equipment in a city park because the activity was of a type that the Legislature intended to include as recreation. *Id.* at 615. UTA argues that the users of stadiums and sports fields are similarly engaged in recreation under the statute and that the court of appeals' determination to the contrary is in conflict with *City of Bellmead*. UTA further points out that the court of appeals' decision here conflicts with another court of appeals' decision, which applied the recreational use statute to a spectator at a baseball game. *See Sam Houston State Univ. v. Anderson*, No. 10-07-00403-CV, 2008 WL 4901233, at *3 (Tex. App.—Waco Nov. 12, 2008, no pet.) (mem. op.) (concluding that statute applied to a spectator whose arm was broken when the bleachers collapsed during a baseball game).

Decisions conflict when there is an "inconsistency in [the] respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.225(e). The conflict here satisfies that definition and thus supports our jurisdiction. We turn then to the recreational use statute and the question presented: whether a spectator at a competitive-sports event is engaged in "recreation" under the recreational use statute.

### III

The recreational use statute protects landowners who open property for recreational purposes, limiting their liability to the recreational user. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

4

The statute accomplishes this by elevating the burden of proof in premises liability cases in which it applies. *See Stephen F. Austin State Univ.*, 228 S.W.3d at 659 (noting that the statute "effectively requires . . . either gross negligence or an intent to injure"). The statute, however, only applies to recreational uses, which the statute defines through a non-exclusive list of included activities. Under the statute,

> "Recreation" means an activity such as:
>   (A) hunting;
>   (B) fishing;
>   (C) swimming;
>   (D) boating;
>   (E) camping;
>   (F) picnicking;
>   (G) hiking;
>   (H) pleasure driving, including off-road motorcycling and off-road automobile driving and the use of all-terrain vehicles;
>   (I) nature study, including bird-watching;
>   (J) cave exploration;
>   (K) waterskiing and other water sports;
>   *(L) any other activity associated with enjoying nature or the outdoors*;
>   (M) bicycling and mountain biking;
>   (N) disc golf;
>   (O) on-leash and off-leash walking of dogs; or
>   (P) radio control flying and related activities.

TEX. CIV. PRAC. & REM. CODE § 75.001(3) (emphasis added).

The issue in this case is whether the statutory term "recreation" reasonably includes competitive sports and their spectators. We did not answer that question in *City of Bellmead v. Torres*. *See* 89 S.W.3d at 614 (declining to decide whether "softball is . . . recreation within the meaning of the Statute"). We did, however, apply subpart (L) in that case to enlarge the statutory list to include an omitted activity. *Id*. at 615. Because competitive team sports—like soccer—and

5

spectating are also omitted from the recreational-activities list, the focus again is on subpart (L)'s "*any other activity associated with enjoying nature or the outdoors*."

As mentioned, we did not decide whether playing or watching softball was "recreation" in *City of Bellmead*. The court of appeals there, however, considered the issue and decided it was not under the statute. *Torres v. City of Bellmead*, 40 S.W.3d 662, 664-65 (Tex. App.—Waco 2001), *rev'd on other grounds*, 89 S.W.3d 611 (Tex. 2002). Although Torres had gone to the city's softball complex to play softball, we declined to consider her purpose for entering the park, reasoning that her purpose for entry did not control the statute's application. *City of Bellmead*, 89 S.W.3d at 614. Instead of softball, we focused on Torres' use of a swing set in the park because that was the activity that led to her injury. *Id*. In reversing the court of appeals, we reasoned that the use of playground equipment, although not specifically included in the statutory list as a recreational activity, was nevertheless covered as "the type of activity 'associated with enjoying . . . the outdoors'" under subpart (L). *Id*. at 615 (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)).

UTA argues that Williams was also engaged in recreation at the time of her accident because her attendance at the soccer game was similarly an "activity associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). UTA describes subpart (L) as a "broad catchall provision" sufficient to include spectators in stadiums who watch competitive-sports events.

Williams responds that subpart (L) is not so broad. She argues that the meaning of "any other activity associated with enjoying nature or the outdoors" is informed by the other listed activities and that none of these are similar to watching competitive sports at a large, multipurpose stadium. Underpinning Williams' argument is the principle of *ejusdem generis*.

6

That principle is a familiar canon of statutory construction, which provides that general terms and phrases should be limited to matters similar in type to those specifically enumerated. *City of Houston v. Bates*, 406 S.W.3d 539, 545 (Tex. 2013); *see also Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) (noting that "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"). In a similar vein, we have noted that context is fundamental to understanding the use of language and that meaning cannot ordinarily be drawn from isolated words or phrases but must typically be determined from statutory context. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

We are also "typically inclined to apply a term's common meaning [unless] a contrary intention is apparent from the statute's context." *Bates*, 406 S.W.3d at 544. Were we to apply recreation's ordinary meaning here, we would unquestionably include competitive team sports and spectators within its scope. *See, e.g.*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 985 (1984) (defining "recreation" generally as refreshment from work or a diversion; in other words, something done to relax or have fun). But the Legislature did not provide that the statute was to cover recreation generally but rather defined the term through section 75.001(3)'s list of included activities. And although the Legislature has broadened the statute's reach over the years, it has not made it generally applicable to all refreshing, relaxing, or enjoyable activities. "Recreation" under the statute has remained more specific than the word's ordinary meaning.

When first enacted in 1965, the Legislature limited the statute to hunting, fishing, or camping on private property.[1] Over the last fifty years, the Legislature has added to the recreational-activities list, but as a class these activities have generally remained consistent. For example, the list was enlarged in 1981 to include "activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing and water sports."[2] An accompanying bill analysis explained that the statute's "original purpose" had been "to keep private land open for hunting, fishing, and camping" but that "many other recreational activities [had] gained popularity" since the law's original enactment, "such as water skiing and cross-country hiking, which require wide open spaces or lakes and streams that may not be available in public parks or preserves near urban centers."[3] The analysis concluded that expanding the list of activities "would encourage owners to open more land for such uses."[4]

For the next fifteen years, the recreational-activities list remained relatively unchanged. During this period, the statute was recodified as chapter 75 of the Civil Practice and Remedies Code,[5] and in 1995 it was amended to extend its protection to publicly held land.[6]

---

[1] *See* Act of May 29, 1965, 59th Leg., R.S., ch. 677, § 1, 1965 Tex. Gen. Laws 1551 (protecting "any owner, lessee or occupant of real property giv[ing] permission to another to enter the premises for purposes of hunting, fishing and/or camping").

[2] *See* Act of May 30, 1981, 67th Leg., R.S., ch. 349, § 2, sec. 6(b), 1981 Tex. Gen. Laws 934.

[3] House Study Group, Bill Analysis, Tex. H.B. 749, 67th Leg., R.S. (1981).

[4] *Id.*

[5] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 75.001-.003, 1985 Tex. Gen. Laws 3242, 3299.

[6] Act of May 26, 1995, 74th Leg., R.S., ch. 520, § 2, 1995 Tex. Gen. Laws 3276; *see also* TEX. CIV. PRAC. & REM. CODE § 75.003(e) (noting chapter 75's general application to the government); *Shumake*, 199 S.W.3d at 284 (noting statute's application to both public and private land).

What UTA refers to as the "catchall" provision was added in 1997.[7] The recreational-activities list was amended that year to include "bird watching and any other activity associated with enjoying nature or the outdoors."[8] Bird-watching was added to subpart (I)'s nature-study provision, while the "catchall" was added at the list's end as subpart (L). See TEX. CIV. PRAC. & REM. CODE § 75.001(3)(I), (L). In 2005, more activities were added.[9] Bicycling and mountain biking, disc golf, and dog walking joined the list, following the "catchall" provision as subparts (M), (N), and (O). See *id*. § 75.001(3)(M)-(O). Off-road motorcycling, off-road automobile driving, and the use of all-terrain vehicles were also added that year, grouped together with an existing subpart that identified pleasure driving as a recreational activity. *See id*. § 75.001(3)(H). Two years later, radio controlled flying and related activities were added.[10] *See id*. § 75.001(3)(P).

JUSTICE JOHNSON argues that the 1997 amendments, which added both bird-watching and the catchall provision to the statute's recreational-activities list, enlarged the statute's reach to outdoor sports and spectating because each is an "*activity associated with enjoying nature or the outdoors*." ___ S.W.3d at ___ (Johnson, J., concurring and dissenting) (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)). This amendment, according to JUSTICE JOHNSON's writing, expanded statutory "recreation" to include enjoyable outdoor activities, irrespective of their connection to the more specific activities listed in the statute. Principles of *ejusdem generis*, however, counsel that a general or broad provision included within a more specific list should be read in context and

---

[7] Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 123, 124.

[8] *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2664, 75th Leg., R.S. (1997).

[9] Act of May 27, 2005, 79th Leg., R.S., ch. 932, § 1, 2005 Tex. Gen. Laws 3178.

[10] Act of May 23, 2007, 80th Leg., R.S., ch. 659, § 1, 2007 Tex. Gen. Laws 1235.

9

limited to matters similar in type to those specifically enumerated. *Bates*, 406 S.W.3d at 545. Although JUSTICE JOHNSON's writing correctly observes that the statute's list of recreational activities is non-exclusive, he nevertheless reads the statute's "catchall" provision as far too inclusive. Subpart (L) does not "catch" an activity simply because it occurs outside.

JUSTICE JOHNSON further finds it illogical that the recreational use statute should cover bird-watchers without including sports spectators. But even bird-watching was arguably not a recreational activity under the statute until 1997, when it was expressly added to the existing nature-study activity.[11] We see nothing illogical about the Legislature's decision to include bird-watching as a covered recreational activity, but not spectating at outdoor sports stadiums. A landowner who allows a person to bird-watch opens his property for use in its natural state. The landowner does not build a stadium or otherwise make improvements for that purpose as in the case of organized-sporting activity.

JUSTICE JOHNSON argues, however, that the statute does not limit itself to natural conditions and therefore must also apply to improvements, such as the 12,500-seat stadium here. ___ S.W.3d at ___. But subpart (L), the provision he relies on to draw this stadium into the Act, refers to activities associated with the enjoyment of nature or the outdoors. "Nature" and the "outdoors" are synonyms, descriptive of "that part of the physical world that is removed from human habitation." THE MERRIAM-WEBSTER THESAURUS 472 (2005). Gathering together in a stadium to cheer a soccer team is not to remove oneself from human habitation but to embrace it; it is not the pursuit of nature but rather the celebration of organized human activity.

---

[11] Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 123, 124 (amending "nature study" to include "bird-watching").

The recreational use statute was originally enacted to encourage landowners to open private land for natural pursuits.[12]  A subsequent amendment extended the statute to public lands and additional amendments have perhaps moved beyond the original purpose, but the bird-watching amendment is not one of them.  Bird-watching conforms with the statute's original purpose and provides no support for extending the statute to spectators at a sports stadium.  Indeed, if the Legislature intended for the recreational use statute to apply generally to competitive sports and their spectators, the catchall provision is a curious choice as it apparently applies to some competitions but not others, that is, those played in open-air stadiums instead of enclosed facilities.

It is apparent from the statute's development that subpart (L)'s "catchall" was not intended simply to incorporate all other outdoor activities into the statute.  Had that been the Legislature's intent, it would not have continued to add specific outdoor activities after adding the "catchall" in 1997.  But subpart (L) must catch some unlisted activities; otherwise, it would have no purpose.  In *City of Bellmead*, we concluded that it did catch the use of playground equipment because that was "the type of activity 'associated with enjoying . . . the outdoors'" that the Legislature had in mind when it added subpart (L).  *City of Bellmead*, 89 S.W.3d at 615 (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)).

But if the statute applies to a park playground, why should it not also apply to a sports stadium and to parents watching their children play there?  UTA argues that no difference exists between playgrounds and sports stadiums or between those who watch or play at either place because both activities are "associated with enjoying nature or the outdoors" within the meaning of subpart (L).  We disagree.

---

[12] *See supra* text accompanying notes 3-4.

11

While both activities are more likely than not to occur outside, their association with the enjoyment of nature or the outdoors is different. "The meaning of individual words 'may be ascertained by reference to words associated with them in the statute.'" *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 566 (Tex. 2014) (plurality op.) (quoting *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 181 (Tex. 1978) (Steakley, J., dissenting)). "[W]here two or more words of analogous meaning"—such as "nature" and "the outdoors"—"are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other." *Id.* (quoting *Eaton*, 573 S.W.2d at 181). Because of its association with nature, "enjoying the outdoors" cannot include every enjoyable outside activity, as JUSTICE BOYD notes. *See* ___ S.W.3d at ___ (Boyd, J., concurring). It must also be associated with nature, or "that part of the physical world that is removed from human habitation." In this sense, the "outdoors" is not integral to the enjoyment of competitive sports because the focus of that activity is the competition itself, not where the competition takes place. In contrast, a park playground is not so much a celebration of organized human activity as it is a respite from it—a place where children can run, play, and otherwise enjoy the outdoors. The enjoyment of nature or the outdoors is thus a significant part of playground activity, but is not integral to the enjoyment of competitive sports. Although soccer may be played in an open-air stadium, a soccer game, as ordinarily understood, is not associated with nature in the sense indicated by the statutory definition of "recreation." Because the outdoors and nature are not integral to the enjoyment of this activity and because the activity is unlike the others the statute uses to define "recreation," we conclude that subpart (L)'s so-called "catch-all" does not catch this activity. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3) (listing the activities that define recreation under the statute).

12

UTA, however, cites cases from several other states purportedly holding that competitive sports and spectators are included as recreational pursuits under their respective statutes. *See, e.g.*, *Catanzarite v. City of Springfield*, 592 N.E.2d 752, 752-53 (Mass. App. Ct. 1992) (noting that "active pursuits" like playing baseball and "passive pursuits" like watching baseball are covered by the statute); *see also Algave v. Mayor & City Council of Ocean City*, 5 F. Supp. 2d 354, 355 (D. Md. 1998) (playing soccer);[13] *Ambrose ex rel. Ambrose v. Buhl Joint Sch. Dist.*, 887 P.2d 1088, 1089 (Idaho Ct. App. 1994) (playing baseball); *Lowman ex. rel. Lowman v. Ind. Area Sch. Dist.*, 507 A.2d 1270, 1273 (Pa. Commw. Ct. 1986) (baseball spectator); *Brooks v. Northwood Little League, Inc.*, 665 S.E.2d 647, 651 (S.C. Ct. App. 1997) (baseball spectator); *Miller ex rel. Fehring v. Wausau Underwriters Ins. Co.*, 659 N.W.2d 494, 497-98 (Wis. Ct. App. 2003) (playing soccer). UTA submits that these cases "illustrate the way a recreational use statute is supposed to work."

What these cases illustrate to us, however, is that recreational use statutes throughout the country are neither uniform nor uniformly applied.[14] For example, Massachusetts, unlike Texas, does not attempt to define recreation but instead extends its statute's protection to any person "who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor." MASS. GEN. LAWS ch. 21, § 17C(a). As already discussed, the ordinary meaning of the word "recreation" is sufficiently broad to include competitive sports and their spectators.

---

[13] This case does not apply Maryland's recreational use statute but instead holds that summary judgment was correctly rendered under principles of governmental immunity.

[14] *See generally* Robin Cheryl Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User*, 47 A.L.R. 4th 262 (1986). For a complete list of recreational use statutes of the fifty states, see Elizabeth R. Springsteen & Rusty W. Rumley, *States' Recreational Use Statutes*, NAT'L AGRIC. L. CENTER, http://archive.nationalaglawcenter.org/assets/recreationaluse/index.html (last visited Mar. 13, 2015).

Similarly, the Maryland statute defines "recreational purpose" as "any recreational pursuit" and extends coverage to land open "to the public for any recreational and educational purpose." MD. CODE ANN. NAT. RES. §§ 5-1101(g), 5-1102(a).

Pennsylvania's recreational use statute is more like our own, defining a "recreational purpose" to include "hunting, fishing, swimming, boating, . . . camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites." 68 PA. STAT. ANN. § 477-2(3). And as UTA argues, an intermediate court in that state has said that baseball should be included as a recreational purpose under Pennsylvania's statute. *Lowman,* 507 A.2d at 1273. The Pennsylvania Supreme Court, however, would seem to disagree, as it has limited the state's recreational use statute to land that remains largely in its natural state. *Mills v. Commonwealth*, 633 A.2d 1115, 1118 (Pa. 1993); *see also Brown v. Tuntchannock Twp*., 665 A.2d 1318, 1322 (Pa. Commw. Ct. 1995) (recognizing that *Lowman* no longer controls). It has noted that the statute "was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public." *Mills*, 633 A.2d at 1119.

Unlike the Massachusetts, Maryland, and Pennsylvania statutes, the Idaho statute includes "athletic competition" among its list of "[r]ecreational purposes," and the South Carolina statute lists "summer and winter sports" in its "[r]ecreational purpose" list. IDAHO CODE ANN. § 36-1604(b)(4); S.C. CODE ANN. § 27-3-20(d). Wisconsin's statute also mentions "outdoor sport" as a recreational activity but exempts certain organized team sports from the definition. WIS. STAT. § 895.52(1)(g).[15]

---

[15] The Wisconsin statute states that a "'[r]ecreational activity' means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure [and] . . . includes . . . any other outdoor sport, game or educational activity [but] . . . does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place." WIS. STAT. § 895.52(1)(g). The Wisconsin Supreme Court has said that despite this broad definition,

14

In contrast to these statutes, the Texas statute mentions only "water sports" among its list of recreational activities.[16] The only other part of the statute that arguably associates recreational activity with any type of competitive sport is section 75.002(e). TEX. CIV. PRAC. & REM. CODE § 75.002(e). Section 75.002(e) adds certain hockey and skating activities, as well as soap box derby and paintball uses as recreational activities "if the activities take place on premises owned, operated, or maintained by a governmental unit."[17]

The hockey and skating activities were added in 1999, when the Legislature decided to extend the statute's protection to municipalities that provide a place for these activities, if they "take place *inside* a facility owned, operated, or maintained by a municipality."[18] The bill analysis at the time described these activities as "popular 'extreme sports.'"[19] In 2003, the Legislature amended the section to explain that the activities did not have to be indoors for the statute to apply; "inside a facility" was replaced with "on premises."[20] The liability limitation for these activities was further

---

"every outdoor activity is not a recreational activity" for purposes of the statute. *Minn. Fire & Cas. Ins. Co. v. Paper Recycling of La Crosse*, 627 N.W.2d 527, 533 (2001).

[16] TEX. CIV. PRAC. & REM. CODE § 75.001(3)(K). It may be that "disc golf," which was added to the list in 2005, is also a sport. *Id*. § 75.001(3)(N).

[17] Section 75.002(e) provides:
    (e) In this section, "recreation" means, in addition to its meaning under Section 75.001, the following activities only if the activities take place on premises owned, operated, or maintained by a governmental unit for the purposes of those activities:
        (1) hockey and in-line hockey;
        (2) skating, in-line skating, roller-skating, skateboarding, and roller-blading;
        (3) soap box derby use;  and
        (4) paintball use.

[18] Act of May 20, 1999, 76th Leg., R.S., ch. 734, § 1, 1999 Tex. Gen. Laws 3345 (emphasis added).

[19] *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1058, 76th Leg., R.S. (1999.)

[20] Act of May 23, 2003, 78th Leg., R.S., ch. 739, § 1, 2003 Tex. Gen. Laws 2171.

extended to any governmental unit and is thus no longer specific to municipalities.[21] Soap box derby and paintball uses were subsequently added.[22] But none of these amendments suggests that the Legislature intended to include competitive sports and spectating as recreational activities under the statute.

Because we conclude that the recreational use statute does not apply to the activity in this case, we affirm the court of appeals' judgment.

_____
John P. Devine
Justice

Opinion Delivered: March 20, 2015

---

[21] *Id.*

[22] Act of May 27, 2005, 79th Leg., R.S., ch. 932, § 2, 2005 Tex. Gen. Laws 3178, 3179; Act of May 10, 2007, 80th Leg., R.S., ch. 227, § 1, 2007 Tex. Gen. Laws 315.