

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00424-CV

---

LUBBOCK COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 1, APPELLANT

V.

JONATHAN RODRIGUEZ AND ABRISIAN RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIENDS OF E.R., R.R., AND A.R., MINORS, APPELLEES

---

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2021-544,990, Honorable John C. Grace, Presiding

---

June 11, 2024

## DISSENTING OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Being outdoors and watching fireworks, as Rodriguez did here, is not "recreation" as contemplated by the Recreational Use Statute. When coupled with the knowledge that the Recreational Use Statute defines "recreation" as any other activity associated with enjoying nature or the outdoors, it seems like a strange outcome, but nevertheless, this is what the majority concluded. Because the majority relied almost entirely on

*University of Texas at Arlington v. Williams*, 459 S.W.3d 48 (Tex. 2015), a plurality opinion which is not binding precedent, I respectfully dissent.

**ANALYSIS**

Relying on *Williams*, the majority's analysis seems to turn on two issues: spectating (passive observation) and manmade. As an initial matter, the *Williams* opinion is a plurality opinion. 459 S.W.3d at 49–57 (plurality op.). In *Williams*, the Court was fractured. Four justices joined the plurality opinion. *Id.* There were two separate concurring opinions, one joined by two justices, and another joined solely by its author. *Id.* at 57–63 (concurring ops.). The remaining two justices concurred in part and dissented in part. *Id.* at 63–67 (concurring and dissenting op.). While a majority agreed on the result, which was that the Recreational Use Statute did not apply to the spectator's claims because she was not engaged in a recreational activity under the statute, a majority did not agree as to the rationale. In short, a majority of the Court did not embrace the plurality's reasoning. *See id.* at 54–55 (Devine, J., plurality op.) (reasoning that spectating, which is not expressly listed as a recreational activity, does not qualify as recreation under the statute's catch-all provision because spectating is not activity associated with enjoying nature or outdoors, terms that refer to portion of physical world removed from human habitation, because nature and outdoors are not integral to enjoyment of competitive sports, the focus of which is competition itself rather than where competition takes place); *id.* at 57–59 (Guzman, J., concurring) (reasoning that plaintiff was not even spectating when injured but was instead trying to acquire and sign form releasing child from school after soccer match and thus was not recreating because activity at time of injury controls and statute neither defines acquisition or signing of

2

release as recreation nor denominates any similar activity as recreation); *id.* at 60–63 (Boyd, J., concurring) (reasoning that statute cannot be sensibly applied based on its own terms, resorting to canon of construction that statute depriving persons of common-law right must be strictly limited to its plain meaning and not applied in cases that do not clearly fall within scope of statute, and concluding that spectating at soccer match does not clearly fall within scope of this statute).

Plurality opinions are not binding precedent. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). When, as in *Williams*, a majority of the Supreme Court does not agree on the rationale for its judgment, "the judgment itself has very limited precedential value and would control the result only in identical cases." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176–77 (Tex. 1994). The decision does not otherwise bind the lower courts. *Id.* Under these circumstances, the holding of the Court—to the extent that there is a holding—consists of the position taken by those justices who concurred on the narrowest grounds. *Worthy v. Collagen Corp.*, 967 S.W.2d 360, 368 (Tex. 1998).

In *Williams*, the position taken by those justices concurring on the narrowest grounds, albeit for different reasons, was that spectating at a competitive-sports event is not recreation under the Recreational Use Statute. 459 S.W.3d at 54–55 (plurality op.); *id.* at 60–63 (Boyd, J., concurring); *see also Lawson v. Diboll*, 472 S.W.3d 667, 667 (Tex. 2015) (per curiam) (stating *Williams* "determined that the recreational use statute is inapplicable to spectators at outdoor competitive sporting events" and citing Justice Devine's plurality opinion and Justice Boyd's concurrence in support of this proposition). On its face, the Court's narrow holding is not dispositive of the present appeal, which

3

turns on whether Rodriguez's participation in a different outdoor activity, picnicking and enjoying fireworks at a public lake, rather than spectating at a competitive-sports event, is recreation under the statute.

We may, of course, rely on the reasoning of plurality opinions, like the one in *Williams*, to the extent we find that reasoning to be both on point and persuasive. *D.M. Diamond Corp. v. Dunbar Armored, Inc.*, 124 S.W.3d 655, 659 n.6 (Tex. App.—Houston [14th Dist.] 2003, no pet.). But in instances when we do so, we must be careful to apply the Court's existing precedent as we find it, rather than predicting whether the Court will embrace a view expressed by a plurality, because it is not the role of the courts of appeals to abrogate or modify the Court's precedent. *Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

Here, I conclude that *Williams* and this appeal are so dissimilar to one another as to make the *Williams* plurality's reasoning unsuitable. In *Williams*, the Court confronted a materially different scenario than the one before us. Namely, the Court had to decide whether an activity—spectating at a competitive-sports event—was encompassed by the Recreational Use Statute's catch-all provision concerning "any other activity associated with enjoying nature or the outdoors" when that activity did not resemble any of the activities expressly listed by the statute's laundry-list definition of recreation. *See* 459 S.W.3d at 49 (Devine, J., plurality op.) (identifying question as "whether the statute's recreational-activity list reasonably includes a spectator at a competitive-sports event" and agreeing with conclusion of court of appeals that "this activity was too dissimilar to the others on the list to be included" among those covered by statute's definition of recreation).

4

Now we must turn to the two issues the majority relied on in its analysis, spectating and manmade. As outlined above, the majority utilizes the word "spectate" in its analysis from *Williams.* However, the word "manmade" never appears in *Williams.* I suspect the majority uses the word "manmade" in place of "human habitation" – the *Williams* plurality's additional reasoning that the catch-all provision's reference to "enjoying nature or the outdoors" necessarily limits its application to the enjoyment of "that part of the physical world that is removed from human habitation." *Id.* at 54 (Devine, J., plurality op.) (quoting from thesaurus to define terms "nature" and "outdoors" because statute does not define these two terms). As noted, however, a majority of the Court did not embrace this position.

The plurality reasoned that the enjoyment of nature or the outdoors is not essential to spectating in the same way that it is integral to playground activities, like sitting on a swing as addressed by the Court in *Torres*, because the former constitutes a celebration of organized human activity while the latter is a respite from organized human activity. *Compare Williams*, 459 S.W.3d at 54 (Devine, J., plurality op.) ("Gathering together in a stadium to cheer a soccer team is not to remove oneself from human habitation but to embrace it; it is not the pursuit of nature but rather the celebration of organized human activity."), *with id.* at 55 ("In contrast, a park playground is not so much a celebration of organized human activity as it is a respite from it—a place where children can run, play, and otherwise enjoy the outdoors. The enjoyment of nature or the outdoors is thus a significant part of playground activity but, is not integral to the enjoyment of competitive sports."). The plurality did not propose a simple distinction between activities occurring in areas of human habitation and those occurring outside of these areas. Rather, the

5

plurality engaged in a more subtle inquiry, assessing the degree to which an activity not expressly listed in the statute reflected the kind of organized human activity associated with civilization and thus cannot be said to be focused on the enjoyment of nature or the outdoors, which lie outside the ordered bounds of human settlement. *See id.* at 55 (concluding statute's catch-all provision did not encompass spectating at a competitive-sports event, as "the outdoors and nature are not integral to the enjoyment of this activity and because the activity is unlike the others the statute uses to define 'recreation'").

Accordingly, even if we were to employ the *Williams* plurality's reasoning here, this line of reasoning would not lead us to conclude that the Recreational Use Statute is inapplicable in this instance. Unlike spectating at a competitive-sports event at a stadium, enjoying fireworks at a public lake is not susceptible to characterization as a celebration of organized human activity. Unlike a competitive-sports event, where you attend to watch your favorite player, most people do not know or care who is launching the fireworks. You do not watch fireworks for people, you watch fireworks for the colors and sounds in the sky. I agree with the majority that simply because something can occur outdoors, does not affect the analysis of whether or not the Recreational Use Statute is applicable; however, fireworks and the outdoors are integral. You cannot enjoy fireworks indoors.

Notably, all the justices who joined the Court's judgment in *Williams* agreed that to fall within the scope of the statute, any activity not expressly listed under the definition of recreation must bear some resemblance to one of those expressly listed. *See Williams*, 459 S.W.3d at 53–55 (Devine, J., plurality op.) (reasoning that statute must be read to encompass only activities similar to those expressly listed in definition of recreation); *id.*

6

at 58 (Guzman, J., concurring) (agreeing that unlisted activities must be similar to those that are listed to fall within catch-all provision of statutory definition of recreation); *id*. at 60–62 (Boyd, J., concurring) (agreeing in principle that unlisted activities must be similar to those listed to qualify as recreation but concluding that listed activities are so varied that statute was difficult to decipher, and that spectating at a competitive-sports event does not clearly fall within language of catch-all provision of statute's definition of recreation). The mode of analysis we apply today comports with this majority view of the statute. Here, watching fireworks is similar to watching "radio control flying and related activities." TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(P). Both activities you sit and enjoy a show in the sky. The only difference, instead of the operator flying a radio-controlled plane, the operator launches a firework into the sky.

### When does picnicking end?

In *Torres*, the Supreme Court of Texas explained that, because the Recreational Use Statute is a premises defect statute, whether a particular action qualifies as "recreation" turns on the precise activity the plaintiff was engaged in when the injury occurred. 89 S.W.3d at 614. Texas courts have also recognized that persons may be engaged in "recreation" when engaged in acts that are incidental to their active participation in a recreational activity. *See, e.g., City of Dalhart v. Lathem*, 476 S.W.3d 103, 108 (Tex. App.—Amarillo 2015, pet. denied) (applying statute when child injured while seated at table inside pool facility during break mandated by lifeguards); *Karl v. Brazos River Auth.*, 494 S.W.3d 168, 172–74 (Tex. App.—Eastland 2015, pet. denied) (applying statute when plaintiff injured while walking on premises en route to go swimming).

Other than the recitation of case law, the majority's analysis on the activity Rodriguez was engaged in at the time simply accepts Rodriguez's description as "spectating fireworks." There is no analysis on whether or not Rodriguez was picnicking. When does picnicking end? It does not end when the food is consumed. Certainly, a family could lie on a blanket and enjoy clouds after finishing their meal during a picnic. Can you not bird watch and enjoy radio controlled flying shows when picnicking? Just because you are also watching fireworks, does not mean you are finished picnicking.

In any event, I conclude the Recreational Use Statute applies to Rodriguez's claims. Even if his picnic had ended someway, enjoying fireworks is so similar to viewing radio controlled flying planes and integral to the outdoors, the Recreational Use Statute should apply.

## Issue 2 – Gross Negligence

"Gross negligence" is defined as an act or omission "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the possibility and magnitude of the potential harm to others and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). A plaintiff must prove gross negligence by clear and convincing evidence. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994).

The National Fire Protection Association standards require a minimum radius of 420 feet between a fireworks launch site and potential spectators. In the underlying case,

8

Extreme Pyrotechnics gained approval for a launch site in accordance with those standards. However, prior to the fireworks display, the launch site was moved causing the fallout area to cover the area where Rodriguez was observing the fireworks.

An employee with Extreme Pyrotechnics testified he moved the launch site at the direction of the general manager for WCID; however, the general manager disputed the testimony. The dispute notwithstanding, Rodriguez did not present any evidence to show WCID knew the changed location of the launch site would affect the fallout area exposing him to the likelihood of serious injury. Neither did Rodriguez present any evidence that the changed location violated the National Fire Protection Association standards. *See Agrium U.S.*, *Inc. v. Clark*, 179 S.W.3d 765, 767 (Tex. App.—Amarillo 2005, pet. denied) (noting that a violation of a law or regulation does not show conscious indifference). Rodriguez failed to present evidence WCID knew the changed launch site posed an extreme degree of risk and that it was aware of the risk but proceeded with conscious indifference to the safety of others. Thus, he failed to prove WCID caused his injuries through gross negligence.

## CONCLUSION

Having determined that the Recreational Use Statute does apply to Appellees' claims, and Rodriguez failed to present evidence of gross negligence, I would reverse and render, granting WCID's plea to the jurisdiction. Accordingly, I respectfully dissent.


Alex Yarbrough
Justice


9