

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00885-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

Nadine **REALME**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-14297
Honorable Christine Vasquez-Hortick, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Irene Rios, Justice
            Beth Watkins, Justice
            Liza A. Rodriguez, Justice

Delivered and Filed: August 28, 2024

AFFIRMED

Appellant the City of San Antonio challenges the trial court's order denying the City's traditional and no-evidence motion for summary judgment, which sought the dismissal of appellee Nadine Realme's claims under the Recreational Use Statute (RUS). Because, as members of the Supreme Court of Texas have noted, an activity is not subject to the RUS simply because it occurs outside, we affirm the trial court's order.

**BACKGROUND**

This is the second appeal to this court arising out of the underlying dispute. *See generally City of San Antonio v. Realme*, No. 04-20-00119-CV, 2021 WL 1009330 (Tex. App.—San Antonio Mar. 17, 2021, pet. denied) (mem. op.). On Thanksgiving Day of 2017, Realme participated in a Turkey Trot 5K race held in downtown San Antonio. During the race, Realme tripped over a metal object protruding from the ground as she was attempting to pass some slower participants. She then fell into a utility pole and broke her arm. Realme brought a premises liability claim against the City, alleging negligence and gross negligence.

The City filed a plea to the jurisdiction challenging the trial court's subject-matter jurisdiction under the Texas Tort Claims Act, and the trial court denied the plea. *See id.* at *1–2. In its appeal from that order, the City argued Realme's claims were barred by both the TTCA and the RUS. *See id.* at *2, *6. We affirmed the trial court's ruling under the TTCA, but we declined to address the City's claim of immunity under the RUS because Realme had not yet had "the opportunity to conduct discovery and develop the record" on that issue. *See id.* at *6. The Texas Supreme Court denied the City's petition for review.

On remand, the City moved for traditional and no-evidence summary judgment based on the RUS. "After considering the City's motion and evidence; [Realme's] response and Exhibits B, C, D, and F attached thereto; and the City's reply," the trial court denied the motion.[1] The City again appealed to this court.

---

[1] The trial court's order shows it did not consider two of Realme's summary judgment exhibits: Exhibit A (Realme's complete deposition and various deposition exhibits) and Exhibit E (deposition of City employee Andrew Garcia, Jr.). The City's summary judgment evidence included excerpts from Realme's deposition testimony, and the trial court's order shows it considered those excerpts.

**ANALYSIS**

***Standard of Review***

The City is a governmental entity and thus is generally entitled to governmental immunity from liability and suit. *See, e.g.*, *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014). A plaintiff suing a governmental entity must establish the entity has consented to suit, "which may be alleged either by reference to a statute or to express legislative permission." *City of San Antonio by & Through City Pub. Serv. Bd. of San Antonio v. Smith*, 562 S.W.3d 75, 80 (Tex. App.—San Antonio 2018, pet. denied). If the entity has not consented to suit, the trial court lacks subject-matter jurisdiction over the plaintiff's claims. *See Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 96 (Tex. 2023). A governmental entity may challenge a trial court's subject-matter jurisdiction through a motion for summary judgment. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *see also Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798 (Tex. 2016) (in determining whether jurisdictional evidence raises a fact question, appellate review mirrors traditional summary judgment review).

When a jurisdictional plea challenges the pleadings, we must determine "if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the pleaded facts do not affirmatively demonstrate the trial court's jurisdiction but also do not reveal incurable jurisdictional defects, the plaintiff should be allowed to amend. *Id.* at 226–27. However, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227. "Our ultimate inquiry is whether the particular facts presented

affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Smith*, 562 S.W.3d at 79.

Where the jurisdictional issue implicates the merits of the parties' claims, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632–33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence is undisputed or does not raise a fact question, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact question on the jurisdictional issue, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

In addition to our review of the parties' pleadings and evidence, this jurisdictional dispute requires us to construe the RUS. Statutory construction presents a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). Our primary goal "is to ascertain and give effect to the Legislature's intent." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 494 (Tex. 2013). "The plain meaning of the text, given the context of the statute as a whole, provides the best expression of legislative intent." *Id.*

### *Applicable Law*

The TTCA generally waives a governmental entity's immunity when, inter alia, a plaintiff's claims arise from an injury caused by a condition of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *Realme*, 2021 WL 1009330, at *2–3. The RUS provides, however, that "if a person enters premises owned, operated, or maintained by a governmental unit and engages in recreation on those premises, the governmental unit does not owe to the person a greater degree of care than is owed to a trespasser on the premises." TEX. CIV. PRAC. & REM. CODE

ANN. § 75.002(f). The RUS therefore operates as a limit on the TTCA's waiver of immunity. *See Univ. of Tex. v. Garner*, 595 S.W.3d 645, 648 (Tex. 2019) (per curiam). When the RUS applies and the defendant is a governmental entity, the plaintiff does not satisfy her burden to establish a waiver of immunity for a premises-liability claim unless she presents evidence that raises a fact question about whether the governmental entity acted with gross negligence, malicious intent, or bad faith. *See id.*; *City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.).

"The [RUS], however, only applies to certain recreational uses that it defines through a list of activities it considers to be 'recreation.'" *Univ. of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 49 (Tex. 2015) (plurality op.); TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3). Because the legislature has defined "recreation" for purposes of applying the RUS, our analysis must be guided by the statutory definition rather than by the term's ordinary meaning. *See* TEX. GOV'T CODE ANN. § 311.011(b); *Hughes*, 246 S.W.3d at 625.

### *Application*

#### *The RUS Does Not Expressly Apply to 5K Participation*

It was undisputed below that at the time of her injury, Realme was running, jogging, or walking on City-owned property during a competitive 5K race organized by non-governmental third parties.[2] If the RUS defined competitive running, jogging, or walking as "recreation," then

---

[2] In its reply brief, the City argues we should not consider the competitive nature of Realme's activity because Realme did not raise that argument in her response to the City's motion for summary judgment. We note, however, that the City's motion for summary judgment referred to the activity in which Realme was engaged at the time of her injury as a "Turkey Trot 5K" and a "race." Additionally, the evidence attached to the City's motion showed Realme participated in the event because she "wanted a social media picture of [herself] with a medal" and that her injury occurred when she tried to go around slower runners. Furthermore, the City's motion, Realme's summary judgment response, and the City's reply in support of its response all cited the Texas Supreme Court's plurality opinion in *University of Texas at Arlington v. Williams*, and Realme's response specifically noted the *Williams* plurality's holding that a spectator at a competitive sporting event was not engaged in "recreation" as the RUS defines that term. *See Williams*, 459 S.W.3d at 49. For these reasons, we disagree with the City's contention that the competitive nature of the event was not raised in the summary judgment proceedings below.

the question of the statute's application would present a simple answer. But the RUS does not expressly define either competitive or non-competitive running, jogging, or walking as "recreation." *See generally* TEX. CIV. PRAC. & REM. CODE § 75.001(3) (defining "recreation" to include, inter alia, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, waterskiing and water sports, bicycling, disc golf, dog-walking, radio control flying, and rock climbing); *Garner*, 595 S.W.3d at 649–50 (RUS applied to plaintiff who was injured while bicycling); *Patrick*, 347 S.W.3d at 457 (RUS's "nature study" provision applied to plaintiff injured at zoo). Additionally, there is no evidence that Realme's running, jogging, or walking during the 5K race was directly associated with any of the statutorily identified forms of recreation. *See Meredith v. Chezem*, No. 03-18-00256-CV, 2018 WL 6425017, at *2–3 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.) (RUS applied to plaintiff injured while returning from pleasure driving); *City of Corpus Christi v. Ferguson*, No. 13-12-00679-CV, 2014 WL 495146, at *4–5 (Tex. App.—Corpus Christi–Edinburg Feb. 6, 2014, no pet.) (mem. op) (RUS applied to plaintiff injured while walking to marina shower because that action was "part of her broader boating-camping activities"). Finally, there is no suggestion that Realme was traveling to or from any activity the statute expressly defines as "recreation" at the time of her injury. *See, e.g.*, *Karl v. Brazos River Auth.*, 494 S.W.3d 168, 173 (Tex. App.—Eastland 2015, pet. denied) (RUS applied to plaintiff who "was in the process of traveling to the recreational [swimming] area on the premises when she was injured").

*Subsection (L) Provides a Catchall Definition*

The City argues, however, that outdoor running, jogging, and walking fall within the RUS's catchall provision—subsection (L)—which provides that "recreation" includes "any other activity associated with enjoying nature or the outdoors[.]" TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). Realme responds that the Texas Supreme Court's plurality opinion in *University of Texas at*

*Arlington v. Williams* supports a conclusion that she was not engaged in "recreation" because she was participating in an organized competitive event. *See Williams*, 459 S.W.3d at 51, 57. Despite an exhaustive search, we have found no Texas authority that directly addresses this specific question. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (noting plurality opinions are not binding precedent).

### *The City Seeks an Expansive Interpretation of Subsection (L)*

The City urges a categorical approach, asking us to create a per se rule that *all* outdoor running, jogging, and walking constitutes "recreation" under subsection (L). As support for its argument, the City points to authority it contends shows "courts have recognized these activities as recreation, including in the context of the [RUS]." We disagree with this assessment of the City's cited authority. Most of the authority upon which the City relies describes running, jogging, and walking as falling within the ordinary meaning of the word recreation—i.e., pleasurable activities performed for leisure—rather than as within the RUS's statutory definition.

The first case the City cites for this proposition, *Suarez*, was a premises-liability suit arising out of the drowning deaths of a man and his children on government-owned land. *See Suarez*, 465 S.W.3d at 627. The surviving plaintiff did not dispute that the decedents drowned while swimming and picnicking, nor did she dispute that both activities are expressly included in the RUS's definition of "recreation." *See id.* at 632; TEX. CIV. PRAC. & REM. CODE § 75.001(3)(C), (F). The *Suarez* court mentioned the word "running" a single time, when it noted in passing that visitors to the premises used that area for "recreational activities including . . . running[.]" *See Suarez*, 465 S.W.3d at 628. The court did not hold that running falls categorically within the RUS's statutory definition of "recreation." *See generally id.* at 626–37. In fact, because the plaintiff did not dispute that the RUS applied, the Texas Supreme Court was not required to—and did not—analyze the statutory definition of "recreation" at all. *See generally id.*

The City next cites *State v. Merrill*, a dispute involving grazing rights on state park land, in which the Texas Supreme Court noted, again in passing, that people use parks "generally for recreation . . . such as . . . walking[.]" *See* 334 S.W.2d 432, 433–34 (Tex. 1960). The RUS was not at issue in *Merrill*, and the court did not analyze the statute's definition of "recreation." *See generally id.* at 433–35.

The third case the City cites, *Vidrine v. Center for Performing Arts at the Woodlands*, involved an analysis of both the RUS and the statute's definition of "recreation." *See* No. 09-12-00378-CV, 2013 WL 5302654, at *2–5 (Tex. App.—Beaumont Sept. 19, 2013, pet. denied) (mem. op.). There, the plaintiff was injured while walking on privately owned parkland that was "open to the public and used for a variety of recreational purposes, including: walking [and] jogging[.]" *Id.* at *1–2. The private landowner argued the RUS applied to limit its liability, but the plaintiff argued she was not engaged in "recreation" as defined by the statute because she was merely walking back to her car after a concert. *Id.* at *2. The Beaumont Court of Appeals agreed with the plaintiff, holding that she "was not recreating on the premises on which she was injured"—and, as a result, the RUS did not apply—because she "was only walking through [the premises] to get to the parking lot where her car was parked; not specifically to enjoy the natural beauty of the [premises]." *Id.* at *4–5. In so holding, the court impliedly rejected the argument the City advances here: that outdoor walking is always "recreation" as defined by the RUS. *See id.*

Finally, the City cites *Payne v. City of Galveston*, in which the Houston Fourteenth Court of Appeals noted the Galveston seawall where the plaintiffs were injured was used "as an area of enjoyment . . . for walking, jogging . . . and other activities associated with a coastal tourist area." *See* 772 S.W.2d 473, 475, 481 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (*op. on reh'g*). The plaintiffs themselves, however, were injured not during a walk or a jog, but while they were riding in a rented surrey on the seawall. *See id.*; *see also Surrey*, NEW OXFORD AM. DICTIONARY

(3d ed. 2010) (defining "surrey" as "a light four-wheeled carriage with two seats facing forward"). Although the *Payne* court referred to "recreation" and "recreational activities" throughout the opinion, it did not analyze the RUS or its definition of "recreation," and the opinion appears to show the parties did not raise the RUS for the court's consideration.[3] *See generally Payne*, 772 S.W.2d at 474–78. The *Payne* court did not, as the City implies here, hold or suggest that outdoor running, jogging, and walking falls within the RUS's definition of "recreation."

The City also cites a case in which the parties agreed the plaintiff was engaged in "recreation" while jogging in a city park. *See City of Arlington v. Ukpong*, No. 02-21-00078-CV, 2021 WL 4783169, at *1, *4 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op.). As a result of the plaintiff's concession on this point, the Fort Worth Court of Appeals did not analyze the RUS's definition of "recreation" in that case. *See generally id.* at *1–6. Because Realme makes no similar concession here, *Ukpong* is unhelpful to our analysis.

The City cites no authority expressly holding that all outdoor running, jogging, and walking is included in the statutory definition of "recreation," and we have found none.

*Common Usage at Odds with Statutory Definitions*

Because the evidence shows Realme was participating in an organized footrace at the time of her injury, we must limit our analysis to that activity. *See City of Bellmead v. Torres*, 89 S.W.3d 611, 614 (Tex. 2002) ("It is what [the plaintiff] was doing when she was injured that controls."); *see also Williams*, 459 S.W.3d at 58 (Guzman, J., concurring) (citing *Torres* for the proposition that "whether a particular action qualifies as 'recreation' turns entirely on the precise activity the plaintiff was engaged in when the injury occurs"). There is no question that participating in an

---

[3] The *Payne* court noted it was "undisputed that the [plaintiffs] were licensees." *Payne*, 772 S.W.2d at 477. Because a governmental landowner owes only the duty owed to a trespasser when the RUS applies, it appears the governmental defendants did not rely on the RUS in *Payne*. *See* TEX. CIV. PRAC. & REM. CODE § 75.002(f).

organized footrace is recreation as that term is commonly defined. But because the RUS does not expressly define that activity as "recreation," the statute does not apply here unless it is "within the type of activity 'associated with enjoying [nature or] the outdoors.'" *Torres*, 89 S.W.3d at 615 (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)).

*Majority of Justices in* Williams *Focused on the Reason for Plaintiff's Presence*

In *Williams*, a majority of the Texas Supreme Court held that a *spectator* at a competitive sports event was not engaged in "recreation" as defined by the RUS at the time of her injury. *See Williams*, 459 S.W.3d at 49; *id.* at 57–59 (Guzman, J., concurring); *id.* at 60–63 (Boyd, J., concurring). The four-member plurality concluded that spectating at a competitive sporting event was too dissimilar to the RUS's enumerated activities to satisfy the statute's definition of "recreation." *Id.* at 49. The plurality further explained that an activity does not trigger subsection (L) "simply because it occurs outside." *Id.* at 54. Instead, the plurality believed the statutory language required some additional connection between the activity and enjoyment of the natural world:

> Because of its association with nature, "enjoying the outdoors" cannot include every enjoyable outside activity[.] . . . It must also be associated with nature, or "that part of the physical world that is removed from human habitation." In this sense, the "outdoors" is not integral to the enjoyment of competitive sports because the focus of that activity is the competition itself, not where the competition takes place.

*Id.* at 55. While two concurring justices would have held the RUS did not apply for different reasons,[4] they nonetheless agreed that courts "must construe [subsection (L)] narrowly to encompass only those activities closely connected to enjoying the outdoors." *Id.* at 59 (Guzman,

---

[4] Justice Guzman, who was joined by Justice Willett, would have held the RUS did not apply because the evidence showed the plaintiff was no longer spectating at the time of her injury, but was instead "attempting to acquire and sign forms authorizing a high school to release her daughter after the conclusion of a high school soccer match." *Williams*, 459 S.W.3d at 57–58 (Guzman, J., concurring). Justice Boyd would have held the RUS did not apply because it deprives individuals of a common-law right and therefore must be strictly construed so that it applies only to cases clearly within its purview. *See id.* at 60–63 (Boyd, J., concurring).

J., concurring); *see also Lawson v. City of Diboll*, 472 S.W.3d 667, 669 (Tex. 2015) (per curiam) (unanimously applying *Williams*'s holding to case involving spectator at competitive event and noting the plurality and concurring justices who formed the majority in *Williams* "focused on the type of activity . . . and its relationship to either the activities expressly included in the definition of 'recreation' or appreciation of the natural world").

The plurality's analysis in *Williams* is not binding precedent. *See, e.g.*, *City of Baytown v. Fernandes*, 674 S.W.3d 718, 726–28 (Tex. App.—Houston [1st Dist.] 2023, no pet.). Nevertheless, we believe its reasoning is "both on point and persuasive" under these circumstances. *Cf. id.* at 728 (declining to apply *Williams* plurality's analysis to facts "so dissimilar . . . as to make [that] reasoning inapt"). As noted above, subsection (L) requires a showing that the activity in question is "associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). "Associated" means "connected with something else." *See Associated*, NEW OXFORD AM. DICTIONARY (3d ed. 2010). The basic premise of the *Williams* plurality—that an outdoor setting, without more, is not sufficiently connected to enjoyment of the natural world to bring an activity within subsection (L)—is therefore consistent with subsection (L)'s plain language. *Compare* TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L), *with Williams*, 459 S.W.3d at 54.

This analysis and the *Williams* plurality's application of it are helpful here because the activities at issue in the two cases are factually similar. Like "[g]athering together in a stadium" to watch a soccer game, participating in an organized 5K race through urban streets is a "celebration of organized human activity," not an escape into nature. *See Williams*, 459 S.W.3d at 54. Moreover, "the focus of [both spectating and participating in competitive sports] is the competition itself, not where the competition takes place." *Id.* at 55. Even when an organized competitive footrace is held in a pleasurable or scenic outdoor setting, the purpose of that activity is to move

through that setting as quickly as possible to reach the finish line. *Cf. id.*; *see also Vidrine*, 2013 WL 5302654, at *3–5 (RUS did not apply where evidence showed plaintiff was using premises "as nothing more than a passageway to get to and from [a venue] and its parking lot"). Indeed, the City's own evidence showed Realme's injury resulted from her attempt to go around a group of slower runners in an effort to move more quickly through the outdoors. Because taking time to "enjoy[] nature or the outdoors" is antithetical to the purpose of participating in a competitive footrace, the nature of that activity is inconsistent with the plain language of subsection (L)—just as the spectator's activity was in *Williams*. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L); *Williams*, 459 S.W.3d at 54.

*The City Argues 5K Participation Is Sufficiently Similar to Enumerated Activities*

The City argues that swimming, hiking, cycling, and dog-walking—all of which the RUS expressly identify as "recreation"—are sufficiently similar to participating in a 5K race that we should conclude Realme's activity is included in subsection (L). *See, e.g.*, *City of Plano v. Homoky*, 294 S.W.3d 809, 815–17 (Tex. App.—Dallas 2009, no pet.) (holding RUS applied to plaintiff who was injured in city-owned clubhouse after playing golf even though golf is not statutorily defined as "recreation"). We disagree. Under the principle of *ejusdem generis*, we may not use subsection (L)'s general language to enlarge the class of activities that are specifically described in other parts of the statute. *See Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co., Inc.*, 111 S.W.3d 75, 81 (Tex. 2003). The only commonality between the statutorily enumerated activities upon which the City relies and the 5K race in which Realme was participating at the time of her injury is that they all involve people moving through an outdoor space. If such a tenuous link is enough to bring Realme's activity under the umbrella of subsection (L), then virtually any human activity that occurs outdoors would fall within the RUS's definition of "recreation." Stated differently, if the City's interpretation of the RUS is correct, then Texans will engage in "recreation" as defined by

- 12 -

the RUS—and, as a result, be subject to the RUS's limitation of liability in cases involving both governmental and private landowners—virtually every time they step foot off their own property. Even setting aside the *Williams* plurality's analysis, we do not believe the statutory text supports a conclusion that the legislature intended to cast subsection (L)'s net so broadly. *See Vidrine*, 2013 WL 5302654, at *3–5 (refusing to hold, pre-*Williams*, that outdoor walking was "recreation" for purposes of RUS).

*City's Approach Nullifies Legislature's Decision to Enumerate Activities*

It is true, as the plurality in *Williams* noted, that "subpart (L) must catch some unlisted activities; otherwise, it would have no purpose." *See Williams*, 459 S.W.3d at 54. The *Williams* plurality also noted, however, that if the legislature intended subsection (L) to apply to all outdoor activities merely because they occur outside, it would not have continued to add specifically enumerated activities to the definition of "recreation" after the enactment of subsection (L). *See id.* at 53–54 (noting the legislature added subsection (L) in 1997 and added eight additional specific activities in 2005 and 2007). For the purposes of this analysis, it is significant that dog-walking— which is one of the enumerated activities the City argues is similar to Realme's activity—was among the activities the legislature added several years after subsection (L) took effect. *See id.*; *see also* Act of May 27, 2005, 79th Leg., R.S., ch. 932, § 1, 2005 Tex. Gen. Laws 3178. This post-subsection (L) amendment indicates that the legislature did not believe dog-walking—or, by extension, outdoor walking in general—fell within subsection (L)'s catchall language. *See Suretec Ins. Co. v. Myrex Indus.*, 232 S.W.3d 811, 815 (Tex. App.—Beaumont 2007, pet. denied) ("We presume that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore, we will endeavor to give effect to the amendment.").

For these reasons, we decline the City's invitation to hold that participation in a 5K race is categorically "recreation" as the RUS defines that term.

*Because 5K Participation is Not "Recreation" As A Matter of Law,*
*We Must Review the Evidence*

Even though we have rejected the City's categorical approach to the application of the RUS, we do not hold that outdoor running, jogging, or walking could never fall under subsection (L)'s catchall provision. We must therefore determine whether the evidence in this specific case establishes that the RUS applies here. *See Miranda*, 133 S.W.3d at 227–28. When viewed in the light most favorable to Realme—as the applicable standard of review requires—we do not believe the evidence establishes the necessary connection between Realme's specific activity and "enjoying nature or the outdoors" to deprive courts of jurisdiction to adjudicate this case. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L); *Lawson*, 472 S.W.3d at 669 (considering activity's "relationship to either the activities expressly included in the definition of 'recreation' or appreciation of the natural world"); *see also Lubbock Cnty. Water Control & Improvement Dist. No. 1 v. Rodriguez*, No. 07-23-00424-CV, 2024 WL 2949042, at *3 (Tex. App.—Amarillo June 11, 2024, pet. filed) (mem. op.) (RUS did not apply to plaintiffs injured while watching fireworks display because "their purpose was not to interact with their natural surroundings but rather to be entertained by a human production").

First, as noted above, the City presented evidence establishing that Realme's injury resulted from her attempt to go around a group of slower runners. This evidence would permit a reasonable factfinder to conclude Realme was on the premises with the intent of moving from one place to another as quickly as possible, "not specifically to enjoy the natural beauty of the" setting. *See Vidrine*, 2013 WL 5302654, at *4. The summary judgment evidence also showed that Realme specifically participated in the 5K—which, again, occurred on Thanksgiving Day—because she "wanted to eat turkey and have pies and drink wine and have fun and eat without worr[ying] about calories" and because she "wanted a social media picture of [herself] with a medal[.]" This

evidence directly conflicts with and—for purposes of our summary-judgment level-review—defeats the City's position that it conclusively established that Realme entered the premises to enjoy nature or the outdoors. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L).

In its reply brief, the City cites deposition testimony in which Realme testified that she enjoyed running through downtown San Antonio—the setting of the Turkey Trot 5K—because the area is "beautiful" and "gorgeous." The trial court's order shows, however, that the court declined to consider the only exhibit in which this testimony appeared, and the City has not challenged that ruling on appeal. *See Little v. Needham*, 236 S.W.3d 328, 331 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (refusing to consider summary judgment evidence not considered by trial court). But even if that exhibit were properly before this court, the summary judgment standard requires us to view it in the light most favorable to Realme and indulge every reasonable inference and resolve all doubts in her favor. *See, e.g.*, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the portion of Realme's testimony upon which the City relies referred to her ordinary day-to-day runs through downtown San Antonio, not her participation in the 5K race that led to her injury, we cannot say this evidence conclusively established the applicability of the RUS under these specific circumstances. *See Miranda*, 133 S.W.3d at 227–28; *City of Houston v. Rodriguez*, 658 S.W.3d 633, 641–42 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (trial court did not err by denying summary judgment on jurisdictional issue because evidence raised fact question); *see also Torres*, 89 S.W.3d at 614 (RUS analysis focuses on specific activity in which plaintiff was engaged).

After reviewing the evidence in this case, we hold it does not conclusively establish that Realme's participation in an organized 5K race was the kind of activity the legislature intended to "catch" with subsection (L). *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). We therefore overrule the City's contention that the RUS applies to these facts. Because the City's subsequent

argument—that Realme was required to, but did not, present evidence of gross negligence—was conditioned on its assertion that the RUS applied, we need not reach that argument to dispose of this appeal. TEX. R. APP. P. 47.1.

**CONCLUSION**

We affirm the trial court's order denying the City's motion for summary judgment.

Beth Watkins, Justice